[Civ. No. 65677. Second Dist., Div. One. Dec. 22, 1982.]

IRENE NIETO, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Litt & Wells and William H. Satchell for Plaintiff and Appellant.

Ira Reiner, City Attorney, John T. Neville, Senior Assistant City Attorney, and Richard M. Helgeson, Assistant City Attorney, for Defendant and Respondent.

OPINION

SPENCER, P. J.—

## INTRODUCTION

Plaintiff Irene Nieto appeals from an order of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant City of Los Angeles to her complaint asserting causes of action for quasi-intentional interference with contractual relations, negligence and breach of warranty. Defendant based its demurrer on the ground that the complaint in reality stated a cause of action for wrongful death and plaintiff lacked standing, pursuant to Code of Civil Procedure section 377, to bring such an action.

## STATEMENT OF FACTS

■ On demurrer, all material facts properly pleaded and all reasonable inferences which can be drawn therefrom are deemed admitted. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

Plaintiff's complaint discloses the following express and reasonably inferred facts: On June 27, 1980, plaintiff gave birth to a daughter. The decedent, Kenneth Randolf Ramirez, publicly acknowledged that he was the natural father of this child and provided financial and emotional support to the child in that capacity. Sometime prior to October 16, 1980, plaintiff and decedent entered into an oral contract in which they promised to marry one another on October 20, 1980.

On October 16, 1980, the decedent was wrongfully and recklessly shot and killed by Los Angeles Police Officer Wendell Rhinehart while Officer Rhinehart was acting in the course and scope of his employment. As a result of Officer Rhinehart's actions, the decedent was forced to breach his contract of marriage,

plaintiff was deprived of the decedent's assistance in the support of her daughter and his future society, comfort, attention, services and support.

## CONTENTIONS

Plaintiff concedes that her complaint is, in essence, one for wrongful death and further concedes that she is not among the specifically enumerated classes of persons upon whom Code of Civil procedure section 377 confers standing to sue. Nonetheless, plaintiff contends that she must be afforded standing to sue, in that a literal reading of section 377 denies her equal protection of the laws by invidiously discriminating against a class no less dependent on the decedent than those enumerated and restricting the exercise of her fundamental rights to privacy and freedom of association. For the reasons set forth below, we cannot agree.

## DISCUSSION

### I

■ It is established that the right to privacy is fundamental in nature and encompasses " ' "*Our freedom to associate with the people we choose.*" ' " (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R. 4th 219].) "Under the traditional two-tier test of equal protection, a discriminatory legislative classification that impairs fundamental rights will be subject to strict scrutiny by the courts . . . ." (*Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 592 [150 Cal.Rptr. 435, 586 P.2d 916].) Plaintiff argues that Code of Civil Procedure section 377 serves to penalize her exercise of her right to freely associate with the person of her choice and hence requires the application of strict scrutiny. We disagree.

In support of her argument, plaintiff places reliance principally on two cases: *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d 123, 130, which held that an ordinance restricting the number of persons unrelated by blood, marriage or legal adoption who may live together "as a single housekeeping unit" penalized the exercise of the right to privacy guaranteed by article I, section 1 of the state Constitution, and *Bay Area Women's Coalition* v. *City and County of San Francisco* (1978) 78 Cal.App.3d 961 [144 Cal.Rptr. 591], which held that an ordinance establishing a residency requirement to hold local office penalized the exercise of the fundamental right to travel. In our view, plaintiff's reliance is misplaced.

In contrast to the tensions created by the ordinances at issue in *Adamson* and *Bay Area Women's Coalition*, Code of Civil Procedure section 377 simply confers on certain classes of persons the right to sue for money damages resulting

from wrongful death; the exclusion of other classes of persons therefrom in no manner interferes with an individual's freedom of association. It is inconceivable that an individual's choice of living companion or form of living arrangement bears any relation to the existence or nonexistence of a remedy upon the companion's wrongful death. To hold that a statute so peripheral and unrelated to the fundamental right in question as is section 377 nonetheless penalizes the exercise of that right defies logic. Accordingly, we hold that the appropriate standard of review is the rational relation test, rather than strict scrutiny. (Cf. *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 125 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R. 3d 1204].)

## II

■ It is well established that equal protection of the laws requires only that persons *similarly situated* receive like treatment; it does not preclude the Legislature from drawing distinctions among different groups of individuals. (*Estate of Ginochio* (1974) 43 Cal.App.3d 412 [117 Cal.Rptr. 565].) ■ Plaintiff argues that the legislative amendment of Code of Civil Procedure section 377 in 1975 and the decision in *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106] have destroyed any previous rationale for holding that married persons and unmarried persons living as "nonmarital" or "meretricious" spouses are not similarly situated. Again, we disagree.

In 1975, the Legtislature amended section 377 to add subdivision (b), paragraphs (1) and (2). (Stats. 1975, ch. 334, § 1, p. 784.) Subdivision (b) and paragraph (2) thereof provide: "For the purposes of subdivision (a), 'heirs' means only the following:

". . . . . . . . . . . . . . . . . . . .

"(2) Whether or not qualified under paragraph (1), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren and parents. As used in this paragraph, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid . . . . " Dependent parents "who are not heirs" were first afforded standing in the 1968 amendment to section 377. (Stats. 1968, ch. 766, § 1, p. 1488.)

With one exception, the categories enumerated in subdivision (b), paragraph (2) of section 377 represent no startling departure in the law. It has long been established that putative spouses, defined as persons who in good faith enter into marriages which later prove to be void or voidable, take as heirs under Probate Code section 201 and hence have standing to sue under section 377.

(*Kunakoff* v. *Woods* (1958) 166 Cal.App.2d 59 [332 P.2d 773].) In general, the issue of a void, invalid or annulled marriage are legitimate (see Civ. Code, § 7004 [Stats. 1975, ch. 1244, § 11, p. 3197], superseding Civ. Code, § 195 [repealed Stats. 1965, ch. 299, § 10, p. 1357]) and thus unquestionably heirs with standing under section 377. Moreover, whether or not legitimate, a parent has an enforceable duty to support any child since the enactment of Civil Code section 196a. (Stats. 1913, ch. 132, § 1, p. 218.) Further, although a parent may or may not qualify as an heir (Prob. Code, §§ 221-225), a statutory duty to support any parent in need has been imposed on a child since 1872. (Civ. Code, § 206.) Thus, it is apparent that the 1975 amendment to section 377 either codified existing law or broadened the concept of "heir" to encompass statutory support obligations with respect to the foregoing categories.

The sole exception is the reference to stepchildren in paragraph (2) of section 377, subdivision (b). *Steed* v. *Imperial Airlines, supra,* 12 Cal.3d 115 held that the exclusion of stepchildren from section 377 did not violate equal protection guarantees, notwithstanding a child's dependency on the stepparent for support. In so holding, the court noted that a stepchild was not entitled to succeed to the deceased stepparent's estate, but at best was entitled to support on principles of contract or estoppel; accordingly, the court found the legislative classification of "heirs" to be reasonable. (*Id.,* at p. 123.)

Section 2 of Statutes 1975, chapter 334, provides in pertinent part: ". . . It is the further intent of the Legislature that the amendment to section 377 . . . including dependent stepchildren within the class of persons who may maintain an action for wrongful death alter the rule enunciated in Steed v. Imperial Air Lines (1974), 12 Cal.3d 115." This is an unequivocal legislative declaration of intent: At least as to dependent stepchildren, the Legislature intended a contractual support obligation to have the same force and effect as natural heirship or statutory support obligations. From our review of the history of section 377, we conclude that the hallmark of the statute generally is not, as plaintiff argues, dependency; rather, it is the enforcement of obligations. Therefore, a classification which excludes some dependents is not necessarily unreasonable.

Moreover, we perceive nothing in *Marvin* v. *Marvin, supra,* 18 Cal.3d 660 which requires the conclusion that a classification which excludes plaintiff is unreasonable. *Marvin* simply established the right of unmarried cohabitants to incur implied or express contractual obligations of support so long as the consideration therefor was not solely sexual services. While *Marvin* held such obligations were enforceable in equity, it did not purport to broaden the definition of heirs any more than did *Steed.*

Unmarried cohabitants with enforceable contracts for support clearly differ as a class from spouses and putative spouses. ▮ Spouses receive special

consideration from the state, for marriage is a civil contract "of so solemn and binding a nature . . . that the consent of the parties alone will not constitute marriage . . . ; but one to which the consent of the state is also required." (*Mott v. Mott* (1889) 82 Cal. 413, 416 [22 P.1140, 1142].) Marriage is accorded this degree of dignity in recognition that "[t]he joining of the man and woman in marriage is at once the most socially productive and individually fulfilling relationship that one can enjoy in the course of a lifetime." (*Marvin v. Marvin, supra,* 18 Cal.3d 660, 684.) Consonant therewith, the state is most solicitous of the rights of spouses. (See, e.g., Civ. Code, § 5100 et seq.) The state affords similar protection to certain putative relationships in recognition of the good faith in which the innocent party undertook to marry. (Civ. Code, § 4452.) Unmarried cohabitants receive no similar solicitous statutory protection, nor should they; such would impede the state's substantial interest in promoting and protecting marriage.

 Nor does the Legislature's earlier inclusion of a contractual-obligation category, stepchildren, require the inclusion of unmarried cohabitants. Children are a particularly vulnerable class in their dependency; in no manner are they similarly situated with unmarried adults who choose to cohabit, whatever level of dependency such adults contract for. It is entirely reasonable for the Legislature to draw a distinction between dependent children and dependent unmarried cohabiting adults.

That the Legislature drew just such a distinction is manifest in the amendment to section 377 which followed the *Marvin* decision. In 1977, the Legislature added paragraph (3) to section 377, subdivision (b). (Stats. 1977, ch. 792, § 1, p. 2436.) Paragraph (3) affords standing to *any* dependent child who resided in the decedent's household for the previous 180 days or depended on the decedent for more than one-half of his or her support. With this one act, the Legislature evinced a recognition that all dependent children are similarly situated and, by failing to respond to *Marvin* in the manner of *Steed,* an equal recognition of the distinction between such children and the adults affected by *Marvin.* In summary, we perceive no unwarranted classification and hence, no denial of equal protection of the laws.

### III

 There remains the question of whether section 377, as presently worded, bears a rational relation to a legitimate state purpose. The question has been answered affirmatively in a series of recent cases of sound vitality. As noted in *Vogel v. Pan American World Airways, Inc.* (S.D.N.Y. 1978) 450 F.Supp. 224, 226: "To begin with, the legislature could reasonably have concluded that the failure of meretricious spouses to adopt the responsibility of the marital vows and the legal obligation resulting from a formal marriage ceremony

evidenced a lack of permanent commitment which made compensation for loss of monetary support too speculative to calculate. The legislature also could have legitimately found that the distinction between putative and meretricious spouses serves to avoid fraudulent claims and complicated proof at trial: While putative spouses can prove their relationship with the decedent through documentary evidence of their participation in a marriage ceremony, meretricious spouses would have to prove their relationship through more subjective, and therefore more difficult to evaluate, proof. Finally, the legislature could have rationally expected that its refusal to provide statutory property rights to meretricious spouses of its decedents would encourage its citizens to enter into formal matrimony, thereby promoting its recognized state interest in fostering the institution of formal marriage." (See also *Garcia* v. *Douglas Aircraft Co.* (1982) 133 Cal.App.3d 890, 894-895 [184 Cal.Rptr. 390]; *Harrod* v. *Pacific Southwest Airlines, Inc.* (1981) 118 Cal.App.3d 155, 157-158 [173 Cal.Rptr. 68].) Further, as the rationale developed in *Vogel* so clearly demonstrates, the distinction drawn between unmarried cohabitants and spouses or putative spouses is rationally related to "the legislative goal of placing reasonable limits on wrongful death actions in this state." (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 582 [139 Cal.Rptr. 97, 565 P.2d 122].)

The order is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

A petition for a rehearing was denied January 21, 1983.