[No. B168774. Second Dist., Div. Seven. Sept. 15, 2004.]

JACK HOLGUIN, Plaintiff and Appellant, v.
JOSE FLORES et al., Defendants and Respondents.

**COUNSEL**

Rowley & Rinaldelli and Daniel W. Rinaldelli for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Kenneth D. Smith and Nicholas M. Gedo for Defendants and Respondents.

OPINION

**JOHNSON, J.**—Under California law unmarried cohabiting couples who qualify as "domestic partners" are afforded rights and benefits not afforded to other unmarried couples including the right of the surviving partner to sue for the wrongful death of the other partner. An adult couple living together may qualify as a "domestic partnership" if they are of the same sex or one of them is at least 62 years of age and eligible for benefits under the Social Security Act based on age.[1] Plaintiff, the surviving member of a cohabiting unmarried couple of opposite sex, neither of whom was over age 62, sued for wrongful death of his female partner. The trial court dismissed the suit because plaintiff lacked standing to sue under the wrongful death statute.

Plaintiff's appeal raises the following question: If the state grants the right to sue for wrongful death to the surviving member of a "domestic partnership" may it constitutionally deny the same right to the surviving member of an unmarried cohabiting couple of opposite sex?

We hold the Legislature had rational bases for extending the right to sue for wrongful death to survivors of registered "domestic partnerships" but not to cohabiting unmarried couples in general. Therefore we affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

Plaintiff's verified complaint alleges the following facts which we accept as true for purposes of this appeal.[2]

Jack Holguin and Tamara Booth were an unmarried couple who had lived together for three years at the time of Booth's death. During those three years they shared "an intimate and committed relationship of mutual caring." They were jointly responsible for each other's basic living expenses. Neither Holguin nor Booth were married or a member of a domestic partnership or related by blood. Each was over the age of 18 and mentally competent.

Booth was killed in a traffic accident when a big rig truck driven by defendant Jose Flores sideswiped Booth's car, sending it spinning out of control and crushing it under the truck's back wheels.

Holguin seeks damages for Booth's death in this action for negligence against Flores and the owner of the truck.

---

[1] Family Code section 297, subdivision (b)(6). Future statutory references are to the Family Code unless otherwise noted.

[2] *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728].

Defendants demurred to Holguin's complaint solely on the ground he lacked standing to sue for Booth's wrongful death because he and Booth were not married and were not "domestic partners" as the term is defined in section 297.

Holguin alleges he and Booth met all the statutory requirements necessary to register as a "domestic partnership" under section 297 except the requirements related to gender and age. He contends extending the right to sue for wrongful death to some unmarried cohabiting couples but denying it to others solely on the basis of the couples' gender or age denies the excluded couples the equal protection of the law guaranteed under the United States and California Constitutions.

The trial court disagreed with this argument. It sustained defendants' demurrer without leave to amend and entered judgment for defendants, dismissing the complaint. Holguin filed a timely appeal.

We affirm the judgment. The fact domestic partners are legally or practically prevented from marrying, while cohabiting couples of the opposite sex are not, provides a rational basis for extending the right to sue for wrongful death to the former but not the latter. In addition, married couples and domestic partners have publicly registered their legal relationship while cohabiting couples of the opposite sex have not, thereby providing an additional basis for recognizing the economic loss to the survivors of the former but not the latter.

## DISCUSSION

### I. *UNDER CURRENT LAW HOLGUIN LACKS STANDING TO SUE FOR BOOTH'S WRONGFUL DEATH.*

Before turning to Holguin's constitutional arguments we look to see whether the trial court correctly held Holguin lacks standing to sue for Booth's wrongful death under Code of Civil Procedure section 377.60. The question arises because of ambiguities in the language used in that section and section 297 pertaining to "domestic partners" and "domestic partnerships."

A. *California's Domestic Partnership Law.*

In the year 2000 California became one of the first states to allow cohabiting adults of the same sex to establish a "domestic partnership" in lieu of the right to marry.[3] The statute also authorized domestic partnerships on the part of couples whose Social Security or Supplemental Security Income benefits might be reduced or eliminated if they were to marry.[4]

■ In creating the new status of domestic partnerships the Legislature declared: "Domestic partners are two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring."[5] To establish a domestic partnership both partners must meet the following qualifications: (1) share a common residence; (2) agree to be jointly responsible for each other's basic living expenses incurred during the partnership; (3) not be married or a member of another domestic partnership; (4) not be related by blood in a way which would prevent them from being married under state law; (5) be at least 18 years of age; (6) be of the same sex or one partner be over age 62 and eligible for benefits under the Social Security Act based on age;[6] (7) be capable of consenting to a domestic partnership; (8) not have previously filed a "Declaration of Domestic Partnership" which has not been terminated; (9) file a Declaration of Domestic Partnership with the Secretary of State.[7]

---

[3] Statutes 1999, chapter 588, section 1, adding sections 297 through 299.6 to the Family Code. At the time chapter 588 was enacted California law provided: "Marriage is a personal relation arising out of a civil contract between a man and a woman" (§ 300) and "[o]nly marriage between a man and a woman is valid or recognized in California." (§ 308.5.)

[4] Section 297, subdivision (b)(6)(B) added by Statutes 1999, chapter 588, section 2.

[5] Section 297, subdivision (a) added by Statutes 1999, chapter 588, section 2.

[6] Originally both partners had to satisfy the age requirement. The statute was amended effective 2002 to provide only one member of the couple had to meet the age requirement. (Stats. 2001, ch. 893, § 3, amending § 297, subd. (b)(6)(B).)

[7] Section 297, subdivision (b) added by Statutes 1999, chapter 588, section 2. The full text of this subdivision currently reads as follows. "A domestic partnership shall be established in California when all of the following requirements are met: [¶] (1) Both persons have a common residence. [¶] (2) Both persons agree to be jointly responsible for each other's basic living expenses incurred during the domestic partnership. [¶] (3) Neither person is married or a member of another domestic partnership. [¶] (4) The two persons are not related by blood in a way that would prevent them from being married to each other in this state. [¶] (5) Both persons are at least 18 years of age. [¶] (6) Either of the following: [¶] (A) Both persons are members of the same sex. [¶] (B) One or both of the persons meet the eligibility criteria [for old age benefits under the Social Security Act]. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over the age of 62. [¶] . . . [¶] (9) Both file a Declaration of Domestic Partnership with the Secretary of State pursuant to [sections 298 and 298.5]." (Some of the numbering and wording of section 297 will change effective January 1, 2005 but the substance will remain the same. (See Stats. 2003, ch. 421, § 3).)

Persons desiring to become domestic partners must file a Declaration of Partnership with the Secretary of State declaring they meet the criteria described in the preceding paragraph. Upon receipt of a properly completed form the Secretary of State is to "register the Declaration of Domestic Partnership in a registry of those partnerships . . . ."[8]

A domestic partnership may be terminated if one partner mails a notice of termination to the other, and is automatically terminated if one of the partners dies or marries or the partners no longer share a common residence. Upon termination at least one partner is required to give notice to the Secretary of State and to certain third parties. A former partner cannot enter into a new domestic partnership until six months after the notice of termination is filed unless the partnership ended because of the death or marriage of a partner.[9]

The domestic partnership law, as originally enacted, conferred few rights or benefits on the domestic partners other than the right to register as a domestic partnership.[10] It did not address discrimination against same-sex couples or impose any new obligations on public or private entities, except for the Secretary of State's duty to register the partnerships and their terminations.

Effective in the year 2002, the Legislature amended the domestic partnership law to add a substantial number of new rights and obligations bringing domestic partnerships much closer to marriages. Among other things, the amendments enabled domestic partners to make medical decisions for each other, adopt their partner's child, use sick leave to care for an ailing partner and participate in their partner's conservatorship.[11]

For our purposes, the significant amendment was the expansion of the categories of persons authorized to sue for wrongful death to include the surviving member of a domestic partnership.[12] We discuss that amendment in detail below.

B. *To Be Entitled to Sue for Wrongful Death As a Surviving Domestic Partner the Partners Must Have Been a Registered Domestic Partnership at the Time of the Decedent's Death.*

Code of Civil Procedure section 377.60 states in relevant part: "A cause of action for the death of a person caused by the wrongful act or neglect of

---

[8] Sections 298, 298.5, added by Statutes 1999, chapter 588, section 2.

[9] Sections 298.5, 299, added by Statutes 1999, chapter 588, section 2.

[10] Carrillo-Heian, *Domestic Partnership in California: Is It a Step Toward Marriage?* (2000) 31 McGeorge L.Rev. 475, 485–487.

[11] Statutes 2001, chapter 893.

[12] Statutes 2001, chapter 893, section 2, amending Code of Civil Procedure section 377.60, subdivision (a).

another may be asserted by . . . [t]he decedent's surviving . . . domestic partner[.] . . . . For the purpose of this section, 'domestic partners' has the meaning provided in section 297 of the Family Code."[13] Section 297 states in subdivision (a): "Domestic partners are two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring." Subdivision (a) does not say domestic partners must be of the same sex or one of them must be at least age 62 and eligible for Social Security benefits. Those criteria are contained in subdivision (b) of the statute, which describes how a "domestic partnership" can be established and registered with the Secretary of State.[14]

The language of section 297, subdivision (a) appears definitional ("Domestic partners are . . ."), and is separate from subdivision (b)'s definition of a domestic "*partnership*" which includes criteria of age and gender. It could be argued, therefore, the "meaning" of the term "domestic partners" for purposes of the wrongful death statute is *any* two adults who have chosen to share their lives "in an intimate and committed relationship of mutual caring." Holguin's complaint alleges he and Booth had lived together for three years under just such a commitment.

■ On further analysis, however, we conclude that in order to be a domestic partner entitled to sue for wrongful death an individual must meet the criteria of subdivisions (a) *and* (b).

The language of section 297 unambiguously states its provisions are not to be interpreted as applying to unmarried cohabiting couples generally: "Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over the age of 62."[15]

The amendment which allowed a surviving domestic partner to sue for wrongful death was part of a series of statutory amendments in Assembly Bill No. 25 (2001–2002 Reg. Sess.) enlarging the definition of a domestic partnership and expanding the rights and benefits of its members.[16] As previously explained, in order to qualify as a domestic partnership both partners must be of the same sex, or one of them must be at least 62 years of age and eligible for benefits under the Social Security Act based on age.[17] The evidence is overwhelming that in adopting Assembly Bill No. 25 the Legislature only intended to extend the rights and benefits of members of

---

[13] Code of Civil Procedure section 377.60, subdivisions (a), (f).

[14] See footnote 7, *ante.*

[15] Section 297, subdivision (b)(6)(B).

[16] Statutes 2001, chapter 893.

[17] Section 297, subdivision (b), as amended by Statutes 2001, chapter 893, section 3.

domestic partnerships as defined in section 297, not to create new rights and benefits for unmarried cohabiting couples in general.

The amendment to section 299.5, subdivision (a) made this intent plain. There the Legislature stated: *"Registration as a domestic partner* under this division shall not be evidence of, or establish, any rights existing under law other than those expressly provided to domestic partners in this division and *any provision of law specifically referring to domestic partners."*[18] The Legislative Counsel restated this sentence in the positive: "This bill would expand the legal effect of the registration of a domestic partnership to any provision of law specifically referring to domestic partners."[19] The wrongful death statute is a "provision of law specifically referring to domestic partners."[20] Therefore, in order to sue under the statute the plaintiff must be a registered domestic partner of the decedent. The plaintiff can only be a registered domestic partner if he or she was of the same sex as the deceased partner or one of them was at least 62 years of age and eligible for benefits under the Social Security Act based on age.

The legislative history of Assembly Bill No. 25 also clearly reflects the Legislature's intent to confer additional rights and benefits only on members of registered domestic partnerships.

The Assembly Judiciary Committee described the bill as "seek[ing] to confer various new legal rights on *registered* domestic partners, including rights . . . to bring an action and recover damages for wrongful death and emotional distress."[21]

The Senate committee report on the bill explained that existing law defines domestic partners as two adults having a "committed relationship" *"and* who file a Declaration of Domestic Partnership with the Secretary of State."[22] The report goes on to note the bill would confer on same-sex couples "most of the rights recognized under the law that pertain to married couples" but that "unmarried cohabitants" would remain "without any rights."[23] According to the report the amendment to the wrongful death statute was triggered in part

---

[18] Section 299.5, subdivision (a) as amended by Statutes 2001, chapter 893, section 4, italics added.

[19] Legislative Counsel's Digest, Assembly Bill No. 25 (2001–2002 Reg. Sess.) 13 Statutes 2001, Summary Digest, page 5634.

[20] See Code of Civil Procedure section 377.60, subdivision (a).

[21] Assembly Committee on the Judiciary, Report on Assembly Bill No. 25 (2001–2002 Reg. Sess.) March 13, 2001, page 1, italics added, some capitalization omitted.

[22] Senate Committee on the Judiciary, Report on Assembly Bill No. 25 (2001–2002 Reg. Sess.) July 10, 2001, page 4, italics added.

[23] Senate Committee on the Judiciary, Report on Assembly Bill No. 25 (2001–2002 Reg. Sess.) July 10, 2001, pages 10, 22.

by the well-publicized death of a San Francisco woman mauled by two large dogs. The report noted the woman's domestic partner "has no right under existing law to assert a wrongful death claim against the owners of the vicious dogs that killed her partner. Under this bill that domestic partner would be able to assert a wrongful death action."[24]

■ For the reasons stated above we agree with the trial court's conclusion Holguin and Booth fell in the category of "unmarried cohabitants . . . without any rights." Therefore Holguin does not have standing to sue for wrongful death under current law.

## II. *EXCLUDING THE SURVIVING MEMBER OF AN UNMARRIED COHABITING COUPLE OF OPPOSITE SEX FROM THE CLASS OF PERSONS ENTITLED TO SUE FOR WRONGFUL DEATH DOES NOT DENY THE SURVIVOR EQUAL PROTECTION OF THE LAW.*

As defendants correctly observe, the issue in this case is not the constitutionality of section 297's limitation of domestic partnerships to same-sex couples or couples in which at least one member is over age 62 and eligible for Social Security Act benefits. Nothing in section 297 prevents Holguin from suing for Booth's wrongful death. Furthermore, even if the Legislature extended domestic partnerships to all cohabiting couples regardless of gender or age this would not entitle Holguin to sue for Booth's wrongful death. The Legislature could decide not to incorporate the broadened definition of domestic partners into the wrongful death statute. Thus, the classification Holguin objects to is the one made by Code of Civil Procedure section 377.60 which grants the right to sue for wrongful death to surviving spouses, surviving putative spouses and surviving "domestic partners" but not to surviving members of unmarried couples of opposite sex.

■ It is well settled under California law that recovery for wrongful death is a legislatively created right and in creating such a right the Legislature is not required to extend it to every conceivable class of persons who might suffer injury from the death of another.[25] The decision of the Legislature as to just how far to extend a statutorily created right of action " 'is conclusive, unless it appears beyond rational doubt that an arbitrary discrimination between persons or classes similarly situated has been made

---

[24] Senate Committee on the Judiciary, Report on Assembly Bill No. 25 (2001–2002 Reg. Sess.) July 10, 2001, page 13, and see Donovan, *Baby Steps or One Fell Swoop? The Incremental Extension of Rights is Not a Defensible Strategy* (2001) 38 Cal. Western L.Rev. 1, 7.

[25] *Justus v. Atchison* (1977) 19 Cal.3d 564, 580–581 [139 Cal.Rptr. 97, 565 P.2d 122].

without any reasonable cause therefor.' [Citations.]"[26] Thus California courts have found the equal protection clause does not stand in the Legislature's way if it wants to deny a cause of action for wrongful death to the parent of a stillborn fetus,[27] to a nonadopted stepchild,[28] to a spouse whose marriage to the decedent has been dissolved,[29] or to an adopted child for the wrongful death of her natural mother.[30]

Not every restriction on the right to sue for wrongful death has passed constitutional muster, however. In *Levy v. Louisiana* the United States Supreme Court held a statute which allowed legitimate children to sue for the wrongful death of their mothers but denied that right to illegitimate children constituted an invidious discrimination against the latter "when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother."[31] In *Glona v. American Guarantee Co.* the court considered the flip-side of *Levy.* It concluded there was "no possible rational basis" for allowing a mother to sue for the wrongful death of her legitimate child but not allowing her to sue for the wrongful death of her illegitimate child.[32]

Applying a "rational basis" test, California courts have consistently held it is not a violation of the right to equal protection to bar the surviving member of an unmarried cohabiting couple of opposite sex from asserting a cause of action for the wrongful death of the other member.[33] The last such case, however, was decided more than 20 years ago.[34] Thus we will revisit the question to determine whether, given subsequent developments, what was rational in 1982 is still rational today.

Initially Holguin contends he is being discriminated against because of his gender and age. Therefore, we should not be inquiring whether denying him the right to sue for wrongful death has a rational basis but whether denying him that right is necessary to further a compelling, or at least substantial, state interest. We conclude the rational basis test is the proper test to apply.

---

[26] *Justus v. Atchison, supra,* 19 Cal.3d at page 581.

[27] *Justus v. Atchison, supra,* 19 Cal.3d at pages 580–581.

[28] *Steed v. Imperial Airlines* (1974) 12 Cal.3d 115, 124 [115 Cal.Rptr. 329, 524 P.2d 801].

[29] *Villacampa v. Russell* (1986) 178 Cal.App.3d 906, 910 [224 Cal.Rptr. 73].

[30] *Phraner v. Cote Mart, Inc.* (1997) 55 Cal.App.4th 166, 170–171 [63 Cal.Rptr.2d 740].

[31] *Levy v. Louisiana* (1968) 391 U.S. 68, 72 [20 L.Ed.2d 436, 88 S.Ct. 1509].

[32] *Glona v. American Guarantee Co.* (1968) 391 U.S. 73, 75 [20 L.Ed.2d 441, 88 S.Ct. 1515].

[33] *Harrod v. Pacific Southwest Airlines, Inc.* (1981) 118 Cal.App.3d 155, 157–158 [173 Cal.Rptr. 68]; *Garcia v. Douglas Aircraft Co.* (1982) 133 Cal.App.3d 890, 894–895 [184 Cal.Rptr. 390].

[34] *Nieto v. City of Los Angeles* (1982) 138 Cal.App.3d 464, 471–472 [188 Cal.Rptr. 31].

■ As a general rule, the state may place persons in different classes and treat those classes differently so long as the classification and treatment are not arbitrary and rest on some ground of difference having a rational relationship to the object of the legislation.[35] Some classifications, however, because of their very nature or effect are subjected to a higher level of scrutiny, requiring they be justified by a substantial or, in some cases, compelling state interest.[36]

Such a heightened level of scrutiny is not required in the present case because the wrongful death statute does not discriminate against Holguin on the basis of his gender or age but on the basis of his marital status— unmarried with the right to wed.[37]

As previously discussed, prior to its 2001 amendment the wrongful death statute required the survivor of an adult couple to be the decedent's spouse or putative spouse. This requirement deprived some couples of the statute's protection because although they were the functional equivalent of a married couple their gender or age legally or practically prevented them from marrying.[38] By extending the right to sue for wrongful death to surviving members of domestic partnerships the Legislature remedied this inequity. But Holguin and Booth never suffered from this inequity because they were never members of the class of couples who, because of their gender or age, were barred from marrying and thereby barred from bringing a wrongful death action. Holguin and Booth always had the right to marry. Holguin's argument boils down to the claim the state discriminated against him on the basis of his gender, heterosexual orientation and age by giving him the legal option to marry which it denied to others on the basis of their gender and age. No case we know of has held the plaintiff was denied equal protection because he was a member of a class granted *more* advantages than the comparison class. We decline to adopt this new definition of "reverse discrimination."

Past decisions have found numerous reasons for concluding the state has a rational basis for denying members of unmarried couples the right to sue for a member's wrongful death.[39]

---

[35] *Brown v. Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212].

[36] *Plyler v. Doe* (1982) 457 U.S. 202, 216–218 [72 L.Ed.2d 786, 102 S.Ct. 2382].

[37] Compare *Craig v. Boren* (1976) 429 U.S. 190, 197 [50 L.Ed.2d 397, 97 S.Ct. 451] (classifications based on gender must serve "important governmental objectives" and be "substantially related" to those objectives). We have found no case subjecting classifications based on marital status to a heightened level of scrutiny. *Norman v. Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 9 [192 Cal.Rptr. 134, 663 P.2d 904] suggests the rational basis test applies. The court declined to address the issue in *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1176, fn. 21 [51 Cal.Rptr.2d 700, 913 P.2d 909].

[38] See discussion at page 432, *ante.*

[39] See cases cited in footnotes 33 and 34, *ante.*

It has been held, for example, that denying a cause of action for wrongful death to members of unmarried couples furthers "the state's substantial interest in promoting and protecting marriage."[40] But even the proponents of this justification have admitted its logical flaw. As one court pointed out, "It is inconceivable that an individual's choice of living companion or form of living arrangement bears any relation to the existence or nonexistence of a remedy upon the companion's wrongful death."[41] Furthermore, despite their being denied the right to sue for wrongful death, the number of unmarried cohabiting couples of opposite sex increased 800 percent between 1960 and 1970 and almost tripled between 1970 and 1984.[42] In 2001 a California legislative committee estimated the number of "unmarried cohabitants" in the state as approximately 600,000.[43] Nationwide, the number is purported to be over 4 million.[44]

In *Garcia v. Douglas Aircraft Co.* the court expressed concern "an action based on a meretricious relationship presents greater problems of proof and dangers of fraudulent claims than an action by a spouse or putative spouse."[45] There are several responses to this argument. In *Glona v. American Guarantee Co.*, the court held even if extending wrongful death actions to mothers of illegitimate children "may conceivably be a temptation to some to assert motherhood fraudulently" this was an insufficient reason to deny the mothers a right of action when the alternative was to give "a windfall to tortfeasors."[46] Furthermore, there is no empirical reason to believe the problem of fraud would be any greater in the context of cohabiting couples in general than in the case of "domestic partnerships" or in the case of those who marry solely for the purpose of obtaining pension benefits or health care coverage. In any event, our Supreme Court has held fear of unfounded or fraudulent claims is not a valid reason for disallowing a tort action predicated on a meritorious claim.[47] As to problems of proof, they appear exaggerated. It would not be difficult for the survivor to prove he or she lived with the

---

[40] *Nieto v. City of Los Angeles, supra,* 138 Cal.App.3d at page 471; accord, *Garcia v. Douglas Aircraft Co., supra,* 133 Cal.App.3d at page 895, *Harrod v. Pacific Southwest Airlines, supra,* 118 Cal.App.3d at page 158.

[41] *Nieto v. City of Los Angeles, supra,* 138 Cal.App.3d at page 469.

[42] *Elden v. Sheldon* (1988) 46 Cal.3d 267, 273, 250 Cal.Rptr. 254, footnote 3 [758 P.2d 582].

[43] Senate Committee on the Judiciary, Report on Assembly Bill No. 25 (2001–2002 Reg. Sess.) July 10, 2001, page 22.

[44] Estin, *Unmarried Partners and the Legacy of Marvin v. Marvin: Ordinary Cohabitation* (2001) 76 Notre Dame L.Rev. 1381, 1384–1385.

[45] *Garcia v. Douglas Aircraft Co., supra,* 133 Cal.App.3d at page 895.

[46] *Glona v. American Guarantee Co., supra,* 391 U.S. at pages 76, 75.

[47] *Dillon v. Legg* (1968) 68 Cal.2d 728, 737 [69 Cal.Rptr. 72, 441 P.2d 912].

deceased, or that they were both over the age of 18, unmarried, unrelated by blood, legally competent, and had agreed to be jointly responsible for each other's basic living expenses.[48]

One court has claimed denying unmarried couples the right to sue for one another's wrongful death "is rationally related to 'the legislative goal of placing reasonable limits on wrongful death actions in this state.' "[49] This argument begs the question, however. It is axiomatic the Legislature can place reasonable limits on wrongful death actions. The issue is whether denying standing to survivors of opposite-sex couples is such a "reasonable limitation."

Even if some or all of the above rationales may be questioned, we conclude others retain their viability and permit the distinction the Legislature has made between married and unmarried couples.

For most of its history the common thread uniting plaintiffs who can sue for wrongful death was heirship.[50] In *Steed v. Imperial Airlines* our Supreme Court upheld this classification scheme as rationally based because it provided "for the recovery of a financial loss wrongfully suffered in limited situations by one who stands in a close relationship to a deceased" and "[h]eirs are those who, as a class, stand in the closest relationship to a deceased."[51] The court acknowledged this class might be underinclusive because some persons who are not in the class may "suffer equal or greater losses than some who are within the class."[52] This underinclusiveness does not invalidate the class, however, because "the Legislature is not compelled to anticipate and provide for such persons."[53]

In the years since the Supreme Court decided *Steed* the Legislature has gradually expanded the class of persons entitled to sue for wrongful death.

---

[48] See discussion at pages 432–433, *ante*. Thus it is unlikely that defendants in this action would be faced with the possibility of multiple lawsuits by men all claiming they were living with Booth and sharing basic living expenses with her at the time of her death. (Cf. *Parham v. Hughes* (1979) 441 U.S. 347, 357 [60 L.Ed.2d 269, 99 S.Ct. 1742] [upholding statute denying wrongful death action to father who had not legitimated child born out of wedlock. The court expressed concern several men might sue, all claiming to be the decedent's father.])

[49] *Nieto v. City of Los Angeles, supra,* 138 Cal.App.3d at page 472, quoting from *Justus v. Atchison, supra,* 19 Cal.3d at page 582.

[50] *Steed v. Imperial Airlines, supra,* 12 Cal.3d at pages 119, 123–124.

[51] *Steed v. Imperial Airlines, supra,* 12 Cal.3d at page 124.

[52] *Steed v. Imperial Airlines, supra,* 12 Cal.3d at page 124.

[53] *Steed v. Imperial Airlines, supra,* 12 Cal.3d at page 124.

Two years after the *Steed* decision the Legislature overruled it by amending the wrongful death statute to provide "heirs" include the decedent's dependent stepchildren.[54] Two years after that amendment the Legislature gave standing to a minor whether or not related to the decedent if, at the time of death, the minor had resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of his support.[55] Then, in 2001, the Legislature amended the statute to give standing to "domestic partners" as previously discussed.[56]

The fact the Legislature has gotten away from the concept of heirship in defining the individuals permitted to sue for wrongful death does not mean the existing classifications no longer have a rational basis. As our Supreme Court pointed out in *Justus v. Atchison*, " 'when conferring new rights of action upon particular classes of citizens for injuries not previously actionable . . . [m]any considerations of public policy affect the question of the propriety and extent of such laws, the weight and effect of which, and the method of meeting or avoiding them, are matters resting exclusively in the legislative discretion[.]' "[57] The Legislature's decision as to how far to go in extending the new right "is conclusive" unless it is totally lacking in any rational basis.[58]

The Legislature rationally could have concluded the survivors of same-sex couples and couples with an aged member eligible for Social Security benefits are deserving of solicitude because they are as likely to suffer economic loss from the death of their partners as are spouses but, because of other statutory schemes, they are legally or practically prevented from marrying.[59] Couples such as Holguin and Booth are not entitled to the same solicitude because the law did not prevent them from marrying.[60]

Furthermore, the Legislature could reasonably have concluded the failure of opposite-sex couples "to adopt the responsibility of the marital vows and

---

[54] Statutes 1975, chapter 334, section 2, page 784.

[55] Statutes 1977, chapter 792, section 1, page 2436.

[56] See discussion at pages 433–434, *ante.*

[57] *Justus v. Atchison, supra,* 19 Cal.3d at pages 580–581.

[58] *Justus v. Atchison, supra,* 19 Cal.3d at page 581.

[59] See discussion at page 433, *ante.*

[60] At this point, we have no occasion to consider whether a legislative enactment or constitutional decision authorizing same-sex couples to marry (while also continuing to permit them the alternative of registering as domestic partners) might affect the constitutional analysis in this opinion. We only observe that in such circumstances, opposite-sex couples would appear to have a stronger claim of discriminatory treatment under the existing wrongful death provisions.

the legal obligation resulting from a formal marriage ceremony evidenced a lack of permanent commitment which made compensation for loss of monetary support too speculative to calculate."[61] In the case of married couples this permanency is evidenced by the marriage certificate which provides a public record to all that a legal relationship exists between two persons.[62] In the case of domestic partners this permanency is evidenced by the Declaration of Domestic Partnership which also provides the parties and the public with a record of the partners' legal relationship.[63] No equivalent public record exists for unmarried cohabiting couples who are of opposite sex.

■ For all of the reasons discussed above, we conclude California does not deny the equal protection of the law to the surviving members of unmarried cohabiting couples when it denies them standing to sue for the wrongful death of the other member.

## DISPOSITION

The judgment is affirmed.

Perluss, P. J., and Woods, J., concurred.

---

[61] *Nieto v. City of Los Angeles, supra*, 138 Cal.App.3d at pages 471–472.

[62] Kraus, Family Law In A Nutshell (2d ed. 1986) at pages 68–69.

[63] See discussion at pages 433–434, *ante*.