[No. B168667. Second Dist., Div. Five. Mar. 15, 2005.]

CHARLES KAREL BOULEY II, Plaintiff and Appellant, v.
LONG BEACH MEMORIAL MEDICAL CENTER et al., Defendants and
Respondents.

COUNSEL

Law Offices of Michael A. Lotta, Michael A. Lotta; Law Offices of John Calfee Mulvana and John Calfee Mulvana for Plaintiff and Appellant.

Reback, McAndrews & Kjar, Terrence J. Schafer, Neale B. Gold; Carroll, Kelly, Trotter, Franken & McKenna, Richard D. Carroll, Kristi K. Hendrick, David P. Pruett, Lori A. Conway; Law Offices of Lynn E. Moyer, Lynn E. Moyer; and David J. Ozeron for Defendants and Respondents.

OPINION

**ARMSTRONG, J.—** ■ In 2000, California law first recognized the domestic partnerships of same-sex couples and certain male-female couples who chose "to share one another's lives in an intimate and committed relationship of mutual caring." (Fam. Code § 297, subd. (a).) Since that time, the Legislature has repeatedly acted to expand the rights and responsibilities of domestic partners. This case concerns one of those rights, a domestic partner's standing to sue for wrongful death.

■ The cause of action is a creature of statute, and standing to sue is governed by Code of Civil Procedure section 377.60.[1] (*Steed v. Imperial Airlines* (1974) 12 Cal.3d 115, 119–120 [115 Cal.Rptr. 329, 524 P.2d 801].) The decedent in this case, Andrew Lee Howard, died in May of 2001. On that date, section 377.60 specified that "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on

---

[1] Hereinafter, section 377.60.

their behalf: [¶] (a) The decedent's surviving spouse, children, and issue of deceased children . . . ."

As of January 1, 2002, however, section 377.60 subdivision (a) was amended to include not just spouses and children, but domestic partners as defined in Family Code section 297. It was after that date, in May of 2002, that Mr. Howard's domestic partner, appellant Charles Bouley, filed this suit for medical malpractice against respondents Long Beach Memorial Medical Center, Valley View Internal Medicine, and Drs. George Kooshian, David Amin, and Amy Stone.

Respondents demurred to the suit on the ground that appellant did not have standing to sue, that is, that the case was governed by section 377.60 as it existed when Mr. Howard died, not as it existed when the suit was filed. The trial court sustained the demurrers and dismissed the case. We find that on the plain language of the statute and the legislative history, the 2002 amendments to section 377.60 were intended to operate retroactively. Further, effective January 1, 2005, while this case was on appeal, section 377.60 was again amended. Now, new subdivision (f)(2) of section 377.60 provides that "Notwithstanding paragraph (1), for a death occurring prior to January 1, 2002, a person may maintain a cause of action pursuant to this section as a domestic partner of the decedent by establishing the factors listed in paragraphs (1) to (6), inclusive, of subdivision (b) of Section 297 of the Family Code, as it read pursuant to Section 3 of Chapter 893 of the Statutes of 2001, prior to its becoming inoperative on January 1, 2005." An examination of those amendments reveals that the Legislature intended that these amendments, too, operate retroactively. We further find that there is no constitutional barrier to effectuating the Legislative intent. We thus reverse.[2]

### Discussion

"A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute. [Citations.]" (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) "Phrased another way, a statute that operates to 'increase a party's liability for past conduct' is retroactive. [Citations.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751].) The 2002 and 2005 amendments to section 377.60 may fairly be said to be such statutes.

---

[2] In addition to the wrongful death cause of action, the complaint brought causes of action for negligent infliction of emotional distress and for survival, on behalf of Mr. Howard's estate. Respondents demurred to these causes of action, too, on grounds other than standing. Appellant did not oppose the demurrers on the claim for survival and has made no argument on appeal concerning the emotional distress claim. Although we reverse the judgment in favor of respondents, we do not reverse the ruling sustaining the demurrers to those causes of action.

That is, however, only the beginning of the inquiry. If the Legislature has clearly indicated its intent that the amendments operate retroactively, we must carry out that intent unless the Constitution forbids. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra,* 30 Cal.2d at p. 393.) "[A] statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent 'some constitutional objection' to retroactivity. [Citation.]" (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at p. 841.)

Here, the Legislative intent is unmistakable. In subdivision (d), section 377.60 provides that "This section applies to any cause of action arising on or after January 1, 1993." With that language, the Legislature unambiguously provided that the 2002 amendments must be applied to this lawsuit.

It is true that subdivision (d) was not added to the statute to address the 2002 amendments. Instead, it was added in 1997 as urgency legislation (Stats. 1997, ch. 13, § 1, eff. May 23, 1997) in order to undo the unintended consequences of 1996 amendments, in which the Legislature had inadvertently deprived certain parents of the right to sue. (Wedding, *Cal. Wrongful Death Statute: Correcting an "Unintended Mistake."* (1998) 29 McGeorge L.Rev. 453.)

That bit of history is not determinative. The Legislature is presumed to be aware of existing law (*People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731]) and may certainly be presumed to know the full text of the laws it is amending. The Legislature was free to remove subdivision (d) from the statute once it served its original purpose, or to amend it to specify that it did not apply to the 2002 amendments. The fact that the Legislature chose not to do so can only lead us to conclude that the Legislature intended that subdivision (d) would apply to the 2002 amendments, making those amendments retroactive. (*People v. Bouzas* (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076].)

Further, appellant also has standing to sue because the 2005 amendments to section 377.60 so provide. Section 377.60, subdivision (f)(2) explicitly applies to "a death occurring prior to January 1, 2002," and provides that "a person may maintain a cause of action pursuant to this section as a domestic partner of the decedent by establishing 'the factors listed in paragraphs (1) to (6), inclusive, of subdivision (b) of Section 297 of the Family Code, as it read pursuant to Section 3 of Chapter 893 of the Statutes

of 2001, prior to its becoming inoperative on January 1, 2005." Mr. Howard died prior to January 1, 2002. Appellant has alleged that he and Mr. Howard were domestic partners under the version of Family Code section 297 operative prior to January 1, 2005.[3] Thus, under the plain language of the statute, appellant may sue for wrongful death.

Respondents make two arguments to the contrary. They point out that the statute also provides that the 2005 amendments "are not intended to revive any cause of action that has been fully and finally adjudicated by the courts, or that has been settled, or as to which the applicable limitations period has run." (§ 377.60, subd. (f)(3).) Respondents then argue that this case was fully and finally adjudicated when the trial court dismissed it after demurrers were granted, and that the statute of limitations ran on the case before January 1, 2005.

■ The arguments are not persuasive. The trial court might have finished its work on the case, but it was not finally adjudicated by the *courts*—the Legislature used the plural—at that time. Instead, it came to us for further adjudication. (*Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049, 1059–1060 [111 Cal.Rptr.2d 268] [case has not been " 'litigated to finality' " for purposed of amendments to Code of Civil Procedure section 340.9 if notice of appeal has been filed].) "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed . . . ." (Code Civ. Proc., § 1049.) "[T]he judgment of the trial court is not final until we dispose of the case." (*Metcalf v. U-Haul International, Inc.* (2004) 118 Cal.App.4th 1261, 1266 [13 Cal.Rptr.3d 686].)

As to the statute of limitations, this case was filed within the statute. No new statutory period began to run while we or the trial court were deciding a legal issue in the case.

The history of the 2005 amendments is consistent with the express language. Those amendments were part of Assembly Bill No. 2580 of the

---

[3] Some respondents have argued to the contrary, that the complaint is insufficient because it does not allege that both appellant and Mr. Howard filed declarations of domestic partnership with the Secretary of State, as Family Code section 297 requires. The complaint alleged that appellant was Mr. Howard's domestic partner, and the record includes a declaration of domestic partnership bearing the two signatures, notarized on December 5, 2000. It is true that the Secretary of State date-stamped the document on July 14, 2001, well after Mr. Howard died, but appellant has argued that he could amend his complaint to allege that the document was mailed to the Secretary of State during Mr. Howard's lifetime, so that the date stamp reflects only delay by the Secretary of State. When read liberally for purposes of demurrer, those allegations are enough to allege that appellant and Mr. Howard were domestic partners in compliance with and as defined by the Family Code.

2003–2004 legislative session. As introduced, the bill did not amend section 377.60. It was a cleanup bill to the Domestic Partner Rights and Responsibilities Act of 2003, legislation which greatly expanded the scope of domestic partner rights and responsibilities. (Sen. Com. on Judiciary Analysis of Assem. Bill No. 2580 (2003–2004 Reg. Sess.) as amended June 15, 2004.) The provisions relating to section 377.60 were added in the Senate. The Senate floor analysis explains that "Apparently courts have interpreted the amendment made by AB 25 to Section 377.60 of the Civil Code[4] [the 2002 amendments], as applied to deaths prior to its effective date of January 1, 2002, in different and conflicting ways. These amendments to AB 2580 clarify the application of the AB 25 amendments to those wrongful death actions. The amendments will not affect actions that have been adjudged or settled or where the statute of limitations has run."

Thus, the intent behind the 2005 amendments to section 377.60 is consistent with the Legislative efforts in this area since 2002: the Legislature wished to expand the rights of domestic partners and to allow all domestic partners to enjoy the benefits of the expansions of the law.

■ Having determined the Legislative intent, we turn now to the constitutional question, whether there is a constitutional barrier to effectuating the Legislative intent. "[R]etroactive application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].)

Respondents' argument is that retroactive application of the amendments to section 377.60 would deprive them of due process. They cite *In re Marriage of Bouquet, supra,* 16 Cal.3d 583. Respondents' argument suffers from several flaws.

■ Retroactive application of a law is unconstitutional if it deprives a person of a *vested right* without due process of law. (*In re Marriage of Buol, supra,* 39 Cal.3d at pp. 760–761.) No due process analysis is required unless there is such a deprivation. Thus, in *In re Marriage of Bouquet* the Supreme Court engaged in the due process analysis only after determining that

---

[4] The amendment made by Assembly Bill No. 25 was to section 377.60 of the Code of Civil Procedure, not the Civil Code.

amendments to the community property law actually denuded the wife of a vested property right. Respondents have not identified any vested property right which was infringed by these amendments, and we can see none.[5]

Moreover, a statute can be applied retroactively even if vested property rights are impaired: " ' "Vested rights . . . may be impaired 'with due process of law' . . . ." ' [¶] In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592.)

It is easy to see how an individual could have relied on the community property laws *Bouquet* considered. People may spend or save, marry or divorce, in reliance on those laws, but we do not see how an individual relies on section 377.60 during the events which may later become the basis for a wrongful death suit. Respondents make only one suggestion, arguing that individuals relied on the standing law when purchasing insurance. We find this unlikely. Wrongful death damages are limited to the value of the benefits, including personal services, advice, and training, that the heirs could reasonably have expected to receive from the decedent. (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 423 [167 Cal.Rptr. 270].) The pecuniary value of the decedent's society, comfort and protection is recoverable, but mental and emotional distress, including grief and sorrow, are not. (*Krouse v. Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022].) Damages are thus highly unpredictable, and do not depend solely upon whether the decedent was married or otherwise, or left parents or children or spouses, but on the emotional and financial nature of any of those relationships. How, then, could a person seeking to protect him- or herself from wrongful death suits buy more or less insurance in reliance on the law on standing? Could such a person determine the proper policy limits based on a prediction of the anticipated number of potential decedents who would leave emotionally and financially dependent children, spouses, or domestic partners as survivors? We think not.

---

[5] It is sometimes said that rights created by statute are not vested, but that common law rights are. (*Callet v. Alioto* (1930) 210 Cal. 65, 68 [290 P. 438]; *Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 981–982 [68 Cal.Rptr.2d 553].) Because the wrongful death cause of action is purely a creature of statute, under this analysis any rights respondents had under the old version of the statute were not vested rights.

■ Nor are we persuaded by respondents' argument on the remaining factor identified in *Bouquet*, the public interest at stake in the retroactive application of the law. (*In re Marriage of Bouquet, supra*, 16 Cal.3d at p. 593.) "Vested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." (*In re Marriage of Buol, supra*, 39 Cal.3d at pp. 760–761.)

Respondent argues that the state's interest in the domestic partnership law is not sufficiently strong, citing cases (*Nieto v. City of Los Angeles* (1982) 138 Cal.App.3d 464 [188 Cal.Rptr. 31]; *Harrod v. Pacific Southwest Airlines* (1981) 118 Cal.App.3d 155 [173 Cal.Rptr. 68]; *Hinman v. Department of Personnel Administration* (1985) 167 Cal.App.3d 516 [213 Cal.Rptr. 410]) which hold that the state has an interest in promoting marriage, and thus may extend certain privileges to married partners only.

■ It is well established that the state has a strong interest in promoting marriage. It is also true that the Legislature has recently identified a public interest in promoting stable families and individual rights and responsibilities through the extension of rights to domestic partners. We need not and do not compare the relative strength of those public policies. In order to support retroactive application of a law, the state's interest must be significant, but need not be compelling. (*Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1008 [229 Cal.Rptr. 494].) Retroactive legislation "is justified where . . . such retroactive application reasonably could be believed necessary to serve the public welfare." (*Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 734 [218 Cal.Rptr. 562].)

■ The Legislative history of the domestic partnership laws reveals a significant public interest which would be effectuated by the retroactive application of the standing laws.

In signing Assembly Bill No. 25 of the 2001–2002 legislative session, which added domestic partners to section 377.60 and also amended the Family Code to expand the rights and responsibilities of domestic partners, the Governor wrote "This legislation does nothing to contradict or undermine the definition of a legal marriage, nor is it about special rights. It is about civil rights, respect, responsibility, and, most of all, it is about family. Therefore, I am honored to sign one of the strongest domestic partner laws in the nation."

In 2003, when it enacted Statutes 2003, chapter 421, which expanded the rights and responsibilities of domestic partners, the Legislature explained that "This act is intended to help California move closer to fulfilling the promises of inalienable rights, liberty, and equality contained in Sections 1 and 7 of Article 1 of the California Constitution by providing all caring and committed couples, regardless of their gender or sexual orientation, the opportunity to obtain essential rights, protections, and benefits and to assume corresponding responsibilities, obligations, and duties and to further the state's interests in promoting stable and lasting family relationships, and protecting Californians from the economic and social consequences of abandonment, separation, the death of loved ones, and other life crises." (Stats. 2003, ch. 421, § (1)(a).)

The Legislature further declared that "Expanding the rights and creating responsibilities of registered domestic partners would further California's interests in promoting family relationships and protecting family members during life crises, and would reduce discrimination on the bases of sex and sexual orientation in a manner consistent with the requirements of the California Constitution." (Stats. 2003, ch. 421, § (1)(b).)

We note, too, that domestic partnership is not, as respondent suggests, limited to same-sex couples. Male-female couples otherwise eligible to marry may become domestic partners if marriage would cause them to suffer adverse financial consequences under the Social Security law. (*Holguin v. Flores* (2004) 122 Cal.App.4th 428, 433 [18 Cal.Rptr.3d 749].) Clearly, when it included those couples in the domestic partnership law, the Legislature chose to subordinate the state's interest in promoting marriage to other interests.

The Legislature has thus determined that the state has a significant interest in promoting family relationships by giving rights to domestic partners. The 2005 (and 2002) amendments to section 377.60 effectuate that interest, and may be enforced retroactively without offending due process.

Legislative expressions of retroactivity have withstood challenges in any number of statutes, some of which, like the amendments before us here, may be said to change the rules of a lawsuit midstream. For instance, in *Graczyk v. Workers' Comp. Appeals Bd., supra,* 184 Cal.App.3d 997, a change in the definition of "employee" in the worker's compensation law meant that the plaintiff was an employee at the time of his accident, but was not by the time his workers' compensation claim was adjudicated. The court ruled that the amendments applied retroactively, holding that because the workers' compensation scheme is purely statutory, the plaintiff did not have a

vested right of action (*id.* at p. 1006–1007) and that the state had a "significant, if not a compelling interest in defining the employer-employee status," effectuated by the amendments, so that retroactivity was not barred on due process grounds. (*Id.* at p. 1008–1009.)

Proposition 213, which prohibited uninsured motorists from collecting noneconomic damages in an action arising out of a car accident, has also been applied retroactively to plaintiffs whose cases were pending when the law changed. After determining that the electorate intended retroactive application, courts enforced that intent, finding that the right to recover certain types of damages is not a vested right because it is created by statute, not by common law or the constitution, and because the amendments served an important state interest which justified its retroactivity. (*Yoshioka v. Superior Court, supra,* 58 Cal.App.4th at pp. 981–982; *Savnik v. Hall* (1999) 74 Cal.App.4th 733, 738–739 [88 Cal.Rptr.2d 417]; *Honsickle v. Superior Court* (1999) 69 Cal.App.4th 756, 763–764 [82 Cal.Rptr.2d 36].)

Those statutory changes worked to the detriment of plaintiffs, but defendants may equally be affected. A statute of limitations may be changed retroactively, depriving a defendant of an absolute defense. The Legislature may retroactively revive causes of action by extending limitations periods or similar time statutes relating to procedure which otherwise would bar such lawsuits. (*Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 386 [64 Cal.Rptr.2d 53].) Such a change is deemed merely procedural. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 81 [115 Cal.Rptr.2d 3].)

Similarly, when Code of Civil Procedure section 425.16, the anti-SLAPP statute, was enacted, it was applied to pending cases as a procedural statute (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347 [42 Cal.Rptr.2d 464]), as was a change in the anti-SLAPP law, which removed certain claims from the ambit of that law and deprived a defendant of a defense which existed at the time the case was filed. (*Brenton v. Metabolife International, Inc.* (2004) 116 Cal.App.4th 679, 690 [10 Cal.Rptr.3d 702]; *Metcalf v. U-Haul International, Inc., supra,* 118 Cal.App.4th at pp. 1265–1266; *Physicians Committee for Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal.App.4th 120, 125–130 [13 Cal.Rptr.3d 926].)

In sum, we find that in enacting both the 2002 and 2005 amendments to section 377.60, the Legislature clearly intended to grant standing to individuals in appellant's position. In the absence of any constitutional impediment, we effectuate that intent.

## Disposition

The judgment is reversed. Appellant to recover costs on appeal.

Turner, P. J., and Mosk, J., concurred.