[Civ. No. 30409. Second Dist., Div. One. Dec. 20, 1966.]

THE PEOPLE ex rel. CITY OF BELLFLOWER, Plaintiff and Appellant, v. BELLFLOWER COUNTY WATER DISTRICT, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Sanford N. Gruskin, Deputy Attorney General, Alexander Googooian, City Attorney, and Ralph B. Helm for Plaintiff and Appellant.

Burris & Lagerlof and Cecil E. Clough for Defendant and Respondent.

LILLIE, J.—It being contended that defendant water district, upon the inclusion of its entire area within the corporate limits of relator city, became merged by operation of law with that municipality, the existence of defendant was challenged by this quo warranto proceeding. After a trial, mostly on questions of law, judgment was rendered for defendant from which the People appeal.

The complaint alleged, and the answer admitted, that Bellflower became an incorporated city on September 3, 1957, on

which date the entire territory within the limits of defendant district, organized as a public corporation on March 27, 1957, under provisions of the Water Code, was included within the city's boundaries. The defendant not having formally consented to the above inclusion of its territory, and the city apparently not having theretofore sought such consent, on August 27, 1962, its council adopted a resolution declaring the fact of such merger; this resolution followed the decision of this court in the *Downey* case (April 23, 1962), *infra*; thereafter, the instant action was commenced on August 27, 1963, to obtain an adjudication to that effect. Invoked by plaintiff was the doctrine of merger from operation of law discussed and applied in *People* ex rel. *City of Downey* v. *Downey Water Dist.* (1962) 202 Cal.App.2d 786 [21 Cal.Rptr. 370]: "This doctrine of merger by operation of law is predicated on the theory of duplication of functions—otherwise two distinct governmental bodies claiming to exercise the same authority, powers and franchises simultaneously over the same territory would 'produce intolerable confusion, if not constant conflict.' [Citations.]" (P. 792.) In conformity with this doctrine, and subsidiary to the adjudication sought, the complaint asked that a transfer be ordered to the relator of defendant's assets, properties and facilities, as well as an accounting.

Defendant contended, and its answer in effect so set forth, that the *Downey* case on its facts was distinguishable. Thus, it is alleged that while defendant's entire territory is within the limits of the city, property is owned by defendant outside the municipality's boundaries, to wit, a vault house and pipeline situated in the City of Downey. Too, and by way of affirmative defenses, it is alleged that the action is barred by section 30325, Water Code, requiring that proceedings contesting defendant's validity be brought within three months from its incorporation; that under the First Validating Act of 1958 (Stats. 1958, ch. 10) any action challenging defendant's existence was required to be commenced within six months from April 7, 1958; and finally, that certain bonds in the face amount of $775,000 (paid down to $745,000 at the commencement of this action) were issued after September 3, 1957 (the date of alleged merger and dissolution) which, if voluntarily assumed by the relator city under the theory of automatic merger, would (1) violate the limitations imposed upon its bonded debt, and (2) impair the existing contract between the bondholders and defendant by the transfer of the latter's lia-

bilities thereunder to the city, or (3) if an automatic dissolution of defendant be declared to have occurred, retroactively void such bonds since they were issued by a corporation then out of existence, all contrary to guarantees contained in the state and federal Constitutions.

Initially, we dispose of the claim additionally made in defendant's brief that while permission to sue was properly granted by the Attorney General (*People* ex rel. *Conway* v. *San Quentin Prison Officials*, 217 Cal.App.2d 182, 183 [31 Cal. Rptr. 649]), plaintiff made no showing or representation that leave to appeal was likewise obtained. (*People* v. *City of Huntington Beach*, 128 Cal.App.2d 452, 455 [275 P.2d 601].) Although some references thereto should have been made in the opening brief, there is included as an appendix to the reply brief a true and correct copy of a letter from the Attorney General to the relator's counsel (Mr. Googooian), timely dated, in which the former consents to the taking of the instant appeal. We therefore pass to the remaining points requiring determination.

If, as argued by defendant, the present case is distinguishable from *Downey*, and a supplementing decision similarly entitled (220 Cal.App.2d 539), then the several defenses above mentioned are good. The claim for distinguishability consists in the main of certain legislative enactments assertedly evidencing a legislative intent opposed to the application of the doctrine of automatic merger as reenunciated in the *Downey* cases. That automatic merger may thus be prevented was clearly recognized in the first *Downey* case: "Whether merger occurs depends not alone on 'the probability of a potential conflict between corporations possession dual authority,' but rests upon the intent of the Legislature in the premises. [Citations.] The doctrine of implied legislative intent developed in *Petition of Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453 [111 P. 368], is based on a recognition of the Legislature's absolute power over public corporations established as agencies of the state for purposes of local government. [Citation.]" (P. 797.) The *Fruitvale* case declared that in the absence of a specific provision in the act creating the special district that it shall continue in existence upon being entirely included within the boundaries of a municipal corporation, it must be implied that the Legislature intended that a merger occur and the district cease to exist. (202 Cal.App.2d 786, 797-798.) After further reference to the *Fruitvale* case, the deci-

sion continues: "This holding would seem to indicate that there must be more than mere silence on the part of the Legislature; that there must be some affirmative declaration in the law creating the district to the effect it shall continue in existence upon inclusion by a municipal corporation, before the court will conclude that the Legislature intended that the district shall remain a separate entity under such circumstances." (P. 798.)

That the trial court for the reasons above stated was persuaded of the present proceeding's distinguishability is manifest from its findings of fact and conclusions of law drawn therefrom, several of which are opposed to the determinations (expressly or impliedly) made in the *Downey* cases. For example, it found that defendant owned property outside the district's boundaries, although in the first *Downey* case mention was made (at page 792) of *City of Escalon* v. *Escalon Sanitary Dist.*, 179 Cal.App.2d 475 [3 Cal.Rptr. 889], which holds that the purchase of real property and the acquisition of a right-of-way outside of the district "did not make such property a part of the district." (Pp. 481, 482.) The trial court also concluded, from facts theretofore found, that if merger and dissolution by operation of law had occurred on September 3, 1957, the city would have to assume all of the duties and obligations of the district, including the obligations for retiring the outstanding bonded indebtedness of the district; but in the first *Downey* case a contrary view (extensively discussed) was taken of this claimed defense to the objectives sought by the instant action. Thus, "We find no merit in this argument, for under the merger the city would not only succeed to all of the property and assets of the extinguished district but would inherit all of its liabilities including the fundamental obligation of bonded indebtedness [citations]; the city would be obliged to assume the indebtedness and there is no limitation on its power to do so which could result in an impairment of the bondholder's contract; and the city has the same powers with respect to taxation to protect the bondholders as the district." (P. 804.) Also referred to in the findings is the enactment by the Legislature, following the formation of the district on March 27, 1957, and the incorporation of the city later that year, of its First Validating Act of 1958 (Stats. 1958, ch. 10), effective April 7, 1958. It was not expressly found, nor was it concluded, that the present action was barred by the six months' limitation found in the sub-

ject enactment.[1] If, however, it be implied that such enactment constitutes an expression of the Legislature's intention that defendant should not lose its existence under the circumstances at bar, then it is contrary to the following declaration in the second *Downey* case with respect to this same validating measure: "It may be said generally that curative or validating acts are for the purpose of curing procedural or technical defects in organization, and not for the purpose of reviving an entity that has ceased to exist." (220 Cal.App.2d 539, 543.) Inherent in such declaration is the determination that the validating act did not compel the result claimed for it by appellant there (and defendant here).

We come now to still another legislative enactment which the findings quote in part and presumably from which the following conclusion of law is drawn: "The Legislature of the State of California has expressed its intention that a county water district should not lose its existence upon its being entirely included within a city." Referred to as the District Reorganization Act of 1965, effective September 17, 1965, and codified as section 56400, Government Code, the quoted portion reads as follows: "The Legislature hereby declares that the doctrine of automatic merger of a district with a city or the merger by operation of law of a district with a city shall have and be given no further force or effect. The existence of a district shall not be extinguished or terminated as a result of the entire territory of such district being heretofore or hereafter included within a city unless such district be merged with such city as a result of proceedings taken pursuant to this division." No reference is made in the findings to the remainder of the enactment: "*If on the effective date of this division there shall be any pending action or proceeding seeking or contesting a determination, judgment or decree that there has been an automatic merger by operation of law of a district with a city, the foregoing provisions of this section shall have no application thereto and the court may in any such legal proceedings make and enter judgment in accordance with the law existing prior to the effective date of this divi-*

[1]There likewise appears to have been no express determination that the action was barred by the three months' limitation found in section 30325, Water Code. It should be noted, however, that the first *Downey* case recognized that proceeding (which it was) to be one in quo warranto; since the interests of the public are therein involved, lapse of time constitutes no bar. (*People* v. *Bailey*, 30 Cal.App. 581, 584 [158 P. 1036]; 26 A.L.R.2d 828, 847-850.)

*sion.* Any merger of a district with a city, as a result of automatic merger or merger by operation of law, which shall have been heretofore adjudged by final judgment or decree of a court of competent jurisdiction or heretofore affirmed, directly or indirectly, by any action, conduct or proceedings of both the board of directors of a district and the city council of a city, is hereby confirmed and validated.'' (Italics added.)

It seems that the present proceeding was instituted on August 17, 1963, and judgment was entered on July 23, 1965; it was therefore ''pending'' within the meaning of the ''savings clause'' (as the material above italicized is referred to in the briefs) on the ''effective date of this division'' if, as the court erroneously concluded from a finding so made, it became effective when ''Said bill was signed into law by the Governor of the State of California on July 17, 1965.'' Accordingly, unless this ''saving clause'' has no legal applicability to the situation at bar, the omission of the trial court to make reference thereto in its findings, even under its erroneous view of the law's effective date, becomes significant in light of the rule of statutory construction (Code Civ. Proc., § 1858) providing, among other things, that ''In the construction of a statute . . . the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, *or to omit what has been inserted;* . . .'' (Italics added.)

Not being an act calling elections, providing for tax levies or appropriations for current expenses, the subject legislation did not become effective, of course, until 90 days after the final adjournment of that particular session—in this instance September 17, 1965. (Cal. Const., art. IV, § 1.█) ██ ''It has been uniformly held in this state that a statute has no force whatever until it goes into effect pursuant to the law relating to legislative enactments. It speaks from the date it takes effect and not before. Until that time it is not a law and has no force for any purpose.'' (*People* v. *Righthouse,* 10 Cal.2d 86, 88 [72 P.2d 867].) Defendant contends, and therefore concedes, that a court must dispose of the case in accordance with the law existing at the time of its decision; it accordingly argues, as it must necessarily do, that the statute in question must be given retroactive application. ██ But a statute is presumed to be prospective only in operation and will not be retroactively

applied until such intention clearly appears from the language of the statute itself. (*American Can Co.* v. *City & County of San Francisco*, 202 Cal.App.2d 520, 524 [21 Cal. Rptr. 33].) Too, "It is specifically provided in three of our basic codes that no part thereof is retroactive 'unless expressly so declared.' (Civ. Code, § 3; Code Civ. Proc., § 3; Pen. Code, § 3.) . . . Accordingly, where language used by the Legislature has not clearly shown that retroactive application was intended, the rule against retroactive construction has uniformly been held applicable to codes or acts not containing the provision set forth in the Civil Code, the Code of Civil Procedure, and the Penal Code. [Citations.]" (*DiGenova* v. *State Board of Education*, 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865].) **[1b]** In support of its argument for retroactive application, defendant makes mention of merger cases where the question of the continued existence of the district concerned was said to turn on the legislative intent ascertainable from the governing laws (*City of Sacramento* v. *Southgate Recreation & Park Dist.*, 230 Cal.App.2d 916 [41 Cal. Rptr. 452]; *City of San Diego* v. *Otay Municipal Water Dist.*, 200 Cal.App.2d 672 [19 Cal.Rptr. 595]); in this connection the bald assertion is made that the District Reorganization Act of 1965 (Gov. Code, § 56000 et seq.) represents a rejection of the automatic merger doctrine. True though that assertion may be in view of the express declaration that the doctrine "shall have and be given no further force or effect" (Gov. Code, § 56400), the fact remains that the Legislature as a part of the same statute enacted the "saving clause" expressly exempting the merger here sought from the statute's application. If, as defendant specifically urges, the act reflects "the Legislature's demonstrated distaste for automatic merger," it could have easily done a complete job by providing for the retrospective effect of the legislation presently contended for; but it did not do so. We have considered defendant's further claims that this case falls within the exception permitting a review of matters occurring after entry of judgment where there has been a change in circumstances or a change in the law; none of the decisions cited for the above propositions is applicable here, either because they involve injunctive proceedings operating *in futuro* (*Cal-Dak Co.* v. *Sav-On Drugs, Inc.*, 40 Cal.2d 492, 496-497 [254 P.2d 497]) or procedural problems involving the filing of a claim against a school district. (*Manquero* v. *Turlock etc. School Dist.*, 227 Cal.App.2d

131 [38 Cal.Rptr. 470].) In our opinion, therefore, no clear showing has been made that any retroactive application of the subject statute was intended.

There remains for consideration the effect of the word "may" in the concluding provision of the saving clause that "the court *may* in any such legal proceedings make and enter judgment in accordance with the law existing prior to the effective date of this decision." It is contended by defendant that the use of the word "may" leaves the court some discretion in the premises even though, as we have heretofore concluded, by its use of the word "shall" the Legislature has declared to the contrary. Emphasized in this connection is section 14 of the Government Code providing that " 'may' is permissive." But such provision is subject to section 5 of the same code which states: "Unless the provision or the context otherwise requires, these general provisions, rules of construction, and definitions shall govern the construction of this code." That being so, "It is a fundamental rule of statutory construction that a provision under consideration by the courts should, wherever possible, be given such construction as will reasonably achieve its object and purpose within the context of the legislative scheme." (*Hochfelder* v. *County of Los Angeles*, 126 Cal.App.2d 370, 373-374 [272 P.2d 844].) With respect to the use of the word "may" in another section of the Government Code, the court said in *Hollman* v. *Warren*, 32 Cal.2d 351 at p. 356 [196 P.2d 562]: "Section 8200 of the Government Code provides that the governor 'may' appoint notaries in such number as he deems necessary. Ordinarily, 'may' is permissive (Gov. Code, § 14), but if the provision or context otherwise requires it that meaning is not required (Gov. Code, § 5). It is clear that a mandatory duty to appoint notaries public is imposed." Too, since this is a quo warranto proceeding it is held that "where persons or the public have an interest in having an act done by a public body '*may*' in a statute means '*must*'." (*Uhl* v. *Badaracco*, 199 Cal. 270, 282 [248 P. 917].) In this case it seems clear that the Legislature did not intend that, after a case has been made out for the application of the exemption or exception contained in the immediately preceding provisions of the saving clause, the court would have discretion to determine whether a judgment in accordance with the law prior to the effective date of the act should be made and entered; if that were so, the express mandatory language reflected by such provisions would be meaningless.

For the foregoing reasons the judgment is reversed with instructions to amend its findings of fact and conclusions of law in conformity with the views herein expressed and thereafter enter judgment in favor of plaintiff as prayed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 15, 1967.