178 Cal.App.4th 1382 (2009)
JOHN DOE et al., Plaintiffs and Appellants,
v.
ROMAN CATHOLIC BISHOP OF SAN DIEGO et al., Defendants and Respondents.
No. B209557.
Court of Appeals of California, Second District, Division Eight.
November 6, 2009.
As modified November 17, 2009.
*1385 Zalkin & Zimmer, Irwin M. Zalkin and Devin M. Storey for Plaintiffs and Appellants.
Hennigan, Bennett & Dorman, Lee W. Potts; Shea Stokes Roberts & Wagner, Maria C. Roberts, Shirley Gauvin and Christina Yates for Defendant and Respondent Roman Catholic Bishop of San Diego.
Tobin & Tobin and Paul E. Gaspari for Defendant and Respondent The Roman Catholic Bishop of Monterey in California.
Thompson & Colegate, J.E. Holmes III and Susan K. Brennecke for Defendants and Respondents The Roman Catholic Bishop of San Bernardino, Diocese of San Bernardino Education & Welfare Fund, and certain Does.
Neumiller & Beardslee, Paul N. Balestracci and Lisa Blanco Jimenez for The Roman Catholic Bishop of Stockton as Amicus Curiae on behalf of Defendant and Respondent.

OPINION
RUBIN, Acting P. J.
Fifteen plaintiffs from the coordinated statewide clergy sex abuse cases appeal from the judgment of dismissal entered after *1386 the trial court sustained defendants' demurrers without leave to amend because plaintiffs did not bring their previously time-barred claims against various Roman Catholic Church entities during the one-year revival window for such claims. (Code Civ. Proc., § 340.1, subd. (c).) We reaffirm our decision in Hightower v. Roman Catholic Bishop of Sacramento (2006) 142 Cal.App.4th 759 [48 Cal.Rptr.3d 420], and conclude again that childhood sexual molestation victims whose claims were time-barred before January 1, 2003, had to sue during the ensuing one-year revival period regardless of whether they had yet discovered the link between the earlier abuse and their adult onset of psychological injuries from that abuse.

ISSUE PRESENTED
Until 1998, child molestation victims had until their 19th birthday to sue nonabuser entities or persons for their tortious conduct in connection with the incident.[1] Beginning in 1998, that limitations period was extended to the earlier of three years from the time a plaintiff discovered that adult-onset psychological injury was caused by the molestation, or by his 26th birthday. No such actions were permitted after that time. Effective January 1, 2003, the Legislature scrapped the age 26 cutoff for actions against a limited group of nonabuser defendantsthose who negligently failed to safeguard the victim from molesters under their controlextending the limitations period for those cases to the later of age 26 or three years from discovery of the cause of adult-onset emotional harm. For all such claims that were otherwise time-barred by January 1, 2003, the Legislature provided a one-year revival window that ended on December 31, 2003. (Code Civ. Proc., § 340.1, subds. (b), (c).)[2]
(1) At issue here is whether plaintiffs, who were 26 or older as of January 1, 2003, and who did not sue during the revival window, may do so now if they allege they did not discover the causal link between the molestation and their adult-onset emotional harm until after the new limitations period took effect. As we previously held in Hightower v. Roman Catholic Bishop of Sacramento, supra, 142 Cal.App.4th 759 (Hightower), they may not.

FACTS AND PROCEDURAL HISTORY
Plaintiffs allege they were sexually molested by priests, employees, or other persons under the control of various archdioceses or other entities *1387 affiliated with the Roman Catholic Church.[3] The earliest alleged abuse took place in 1957. The latest occurred in the mid-to-late 1980's. Most of the plaintiffs alleged they were abused during the 1960's and 1970's. By January 1, 2003, the youngest was in his mid-30's and the oldest was most likely in his mid-to-late 50's. Plaintiffs sued after January 1, 2004, alleging they had only recently discovered that psychological injury occurring after turning 18 was caused by the sexual abuse they suffered years before.[4]
After allowing for an omnibus demurrer, where the plaintiffs and defendants appeared collectively, the trial court ruled that despite plaintiffs' claims of recent discovery of the cause of their adult-onset emotional harm, their actions were time-barred because they did not bring them during the 2003 revival period. (§ 340.1, subd. (c).) Defendants' demurrers were sustained without leave to amend, and plaintiffs' actions were dismissed. Plaintiffs then appealed.

STANDARD OF REVIEW
In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as having admitted all material facts that were properly pleaded. Because the only issue raised concerns the interpretation of section 340.1, we exercise our independent judgment and apply the well-known rules of statutory construction. (Shamsian v. Department of Conservation (2006) 136 Cal.App.4th 621, 631 [39 Cal.Rptr.3d 62] (Shamsian).)
(2) The fundamental rule of statutory construction is to determine the Legislature's intent in order to carry out the purpose of the statute. We look first to the words of the statute and try to give effect to the usual and ordinary meaning of the language in a way that does not render any language mere *1388 surplusage. (Pasadena Metro Blue Line Construction Authority v. Pacific Bell Telephone Co. (2006) 140 Cal.App.4th 658, 663-664 [44 Cal.Rptr.3d 556].) "Surplusage" means words or phrases that are unnecessary or lack meaning. (Reno v. Baird (1998) 18 Cal.4th 640, 657 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) The words must be construed in order to achieve a reasonable and commonsense interpretation when viewed in context and in light of the statute's obvious nature and purpose. Statutes must be harmonized both internally and with other related statutes. (Ibid.) Use of a statute's legislative history is proper only if the statute is ambiguous. (Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc. (2005) 133 Cal.App.4th 26, 29-30 [34 Cal.Rptr.3d 520].) If the language is clear and unambiguous, however, there is no need for construction, and it is not necessary to resort to the legislative history as an interpretive aid. (Shamsian, supra, 136 Cal.App.4th at p. 631.)

DISCUSSION

1. The Statutory Relevant History of Section 340.1

Until 1986, the statute of limitations for sexual molestation claims was one year. (§ 340.) If the victim was a minor, however, that period was tolled by section 352 until the victim's 19th birthday. In 1986, the Legislature added section 340.1, which increased the limitations period to three years, but only for abuse of a child under age 14 by a household or family member. (Hightower, supra, 142 Cal.App.4th at p. 765.) Section 340.1 was amended in 1994 to extend the limitations period to the later of either age 26 or three years from the plaintiff's discovery that psychological injury occurring after adulthood had been caused by the sexual abuse. (Former § 340.1, subd. (a).) The 1994 amendment applied to only the perpetrator, meaning that claims against entities that employed or otherwise exercised control over the perpetrator were still subject to the one-year limitations period and the ultimate age 19 cutoff for victims who were minors when the abuse occurred. (Hightower, at p. 765.)
In 1998, the Legislature amended section 340.1 to include causes of action for sex abuse against nonabusers whose negligent or intentional acts were a "legal cause" of a child's sexual abuse. (§ 340.1, subd. (a)(2), (3), added by Stats. 1998, ch. 1032, § 1.)[5] The limitations period for those claims was set at the earlier of three years from discovery that the abuse caused adult-onset psychological harm, or the plaintiff's 26th birthday. (Hightower, supra, 142 *1389 Cal.App.4th at pp. 765-766.) In 1999, the Legislature amended section 340.1 to clarify that the 1998 amendment relating to the liability of nonabuser persons or entities was prospective, and applied only to actions begun on or after January 1, 1999, or, if filed before then, to actions still pending as of that date, "including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999." (§ 340.1, subd. (u), added by Stats. 1999, ch. 120, § 1; Shirk v. Vista Unified School Dist. (2007) 42 Cal.4th 201, 208 [64 Cal.Rptr.3d 210, 164 P.3d 630] (Shirk).)[6]
In short, until January 1, 1999, child molestation victims had until they turned 19 to sue nonabuser persons or entities. As of that date, the limitations period for claims against nonabusers was extended to three years from the discovery that adult-onset psychological injury had been caused by the molestation, with a plaintiff's 26th birthday serving as the absolute cutoff.
(3) The legislative amendment at issue here was passed in 2002 and took effect on January 1, 2003. It retained the limitations period for actions against childhood sex abuse perpetrators at the later of age 26 or three years from discovery of the causal link between adult-onset psychological injury and the molestation. The age 26 cap from the 1998 amendment was retained against nonabuser entities or persons (§ 340.1, subds. (a)(1)-(3), (b)(1)), with an exception carved out for one category of such defendants. "[I]f the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person . . .," then the age 26 cutoff did not apply. (§ 340.1, subd. (b)(2).) In those cases, the statute of limitations became three years from the date of discovery only.[7]
The Legislature also amended section 340.1 to revive for calendar year 2003 all nonabuser claims that fell within the description of section 340.1, subdivision (b)(2) that would otherwise be barred because the limitations period had expired. That provision states: "Notwithstanding any other provision of law, any claim for damages [falling under subdivision (b)(2)] that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003. Nothing in this subdivision shall be construed to alter the applicable *1390 statute of limitations period of an action that is not time barred as of January 1, 2003." (§ 340.1, subd. (c).)[8]
To sum up, effective 2003, section 340.1 established the limitations period for three groups of defendants: (1) for perpetrators, the later of the plaintiff's 26th birthday or three years from discovery (subd. (a)(1)); (2) for nonabusers who did not take reasonable steps to safeguard minors from a known or suspected molester, the later of the plaintiff's 26th birthday or three years from discovery (subd. (b)(2)); and (3) for all other nonabusers whose negligent, wrongful, or intentional conduct was a legal cause of the childhood sexual abuse, the earlier of the plaintiff's 26th birthday or three years from discovery. (Subds. (a)(2), (3), (b)(1).)[9]

2. Plaintiffs' Alleged Recent Discovery That Childhood Molestation Caused Adult-onset Emotional Harm Did Not Revive Their Claims

A. The Hightower Decision

In Hightower, supra, 142 Cal.App.4th 759, the plaintiff alleged he was molested in the early 1970's, meaning his claims became time-barred when he turned 19 in 1977. After making a defective attempt to sue during the 2003 revival period, the plaintiff finally filed a complaint in April 2004. The plaintiff alleged he did not discover the cause of his psychological injuries until 2003, claiming his action was timely under the expanded limitations period approved by the Legislature in 2002. We rejected that contention because the Legislature's one-year revival window for any subdivision (b)(2) claims that had already lapsed "drew a clear distinction between claims that were time-barred and those that were not. Hightower's interpretation would obliterate that distinction by allowing his time-barred claim to take advantage of the new limitations period." (142 Cal.App.4th at pp. 767-768.) Therefore, we held, for subdivision (b)(2) claims like Hightower's that were barred by the pre-2003 statute of limitations, the only available opportunity to sue was during the one-year revival window of 2003.
Plaintiffs contend we were wrong in Hightower because (1) the plain language of the statute shows it was intended to allow claims like theirs; *1391 (2) the Legislature's 2002 reenactment of section 340.1, subdivision (u), which clarified the scope of the 1998 amendment that first allowed for actions against nonabuser entities up to a plaintiff's 26th birthday, shows that subdivision (b)(2) was designed to have retroactive effect; and (3) the legislative history, combined with the Legislature's ever-broadening amendments to the limitations period, show that their claims were valid, especially when viewed in light of section 340.1's remedial nature.[10]

B. Plaintiffs' Claims Are Barred by the Plain Language of Section 340.1

(4) We begin our analysis with the rule that statutes are presumed to operate prospectively from the date they take effect unless (1) they contain express language of retroactivity, or (2) other sources provide a clear and unavoidable implication that the Legislature intended retroactive application.[11] (§ 3; McClung v. Employment Development Dept. (2004) 34 Cal.4th 467, 475 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (McClung); People ex rel. City of Bellflower v. Bellflower County Water Dist. (1966) 247 Cal.App.2d 344, 350 [55 Cal.Rptr. 584] (City of Bellflower).) Subdivision (b)(2), which carved out the new exception for negligent nonabuser entities who failed to safeguard children from known or suspected molesters, is silent on the issue. Standing alone, therefore, it does not confer retroactive application. Instead, it is subdivision (c) that expressly provides for and defines the retroactivity of subdivision (b)(2).
(5) Subdivision (c) states that notwithstanding any other provision of law, "any claim" covered by subdivision (b)(2) that was otherwise barred as of January 1, 2003, solely because the limitations period had expired was revived and "in that case, a cause of action may be commenced within one year of January 1, 2003." (Italics added.) The limitations period in place through December 31, 2002, for claims against nonabuser entities was three years from discovery, with an absolute cutoff of age 26. Therefore, as of that date, there were three groups of child molestation victims whose claims had expired under the then applicable limitations period: (1) those under age 26 who had made discovery more than three years earlier; (2) those who had made their discovery less than three years earlier, but had not yet sued by the time they turned 26; and (3) those who had turned 26 and had not made *1392 discovery at all. We presume the Legislature meant what it said when it provided that "any claim" falling under subdivision (b)(2) was revived by subdivision (c). As a result, it must have included plaintiffs here, who fall into the third category.[12]
Plaintiffs do not dispute that their claims were time-barred years before subdivisions (b)(2) and (c) took effect. Under subdivision (c), however, their claims were revived, "and, in that case, a cause of action may be commenced within one year of January 1, 2003." (§ 340.1, subd. (c).) The plain meaning of this language required plaintiffs to bring their newly revived claims during the one-year revival period. (Shirk, supra, 42 Cal.4th at p. 208 [subd. (b)(2) claims that were already time-barred were revived by subd. (c) "for the year 2003"].) In short, if a subdivision (b)(2) cause of action was time-barred by January 1, 2003, and was not brought by January 1, 2004, it was thereafter barred again.

C. Reenactment of Subdivision (u) Does Not Restore Plaintiffs' Claims

Plaintiffs contend the Legislature's reenactment of subdivision (u) as part of the 2003 amendments shows their claims could still be brought because they were filed after 1999 and because they did not make discovery until after the expanded limitations period took effect in January 2003. In order to understand this argument, we must first recount the applicable statutory history.
As discussed earlier, until 1998, the limitations period for childhood molestation claims against nonabuser entities was one year, extended to the victim's 19th birthday by section 352. In 1998, the Legislature for the first time provided for an extended limitations period against nonabusers: the earlier of three years from discovery, or the plaintiff's 26th birthday. This limitations period applied in two instances: (1) to negligent nonabusers; and (2) to intentional nonabusers. (§ 340.1, subd. (a)(2), (3).) The longer limitations period of the later of age 26 or three years from discovery that applied to those who actually committed the molestation was set forth in subdivision (a)(1).
In 1999, the Legislature enacted subdivision (s) (now subdivision (u)), which clarified that the 1998 amendments "shall apply to any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which *1393 would have been barred by the laws in effect prior to January 1, 1999. Nothing in this subdivision is intended to revive actions or causes of action as to which there has been a final adjudication prior to January 1, 1999."[13]
When the Legislature passed the 2003 amendments at issue here, it did not repeal or delete subdivision (s). Instead, it retained that provision and reenacted it as subdivision (u). Plaintiffs contend that because subdivision (u) conferred retroactive effect on subdivision (a)(2) (negligent nonabuser) and (a)(3) (intentional nonabuser) cases that were then pending, its reenactment in 2003 along with the newly enacted subdivision (b)(2) (negligent nonabusers who knew of the perpetrator's potential to molest and failed to take reasonable safeguards) shows that the Legislature intended subdivision (u) to apply to subdivision (b)(2) cases filed after January 1, 1999. Thus, according to plaintiffs, the plain language of the entire statute shows their claims were timely. If not interpreted in this manner, plaintiffs contend, subdivision (u) is surplusage because it serves no other purpose.
Plaintiffs' contention rests in part on the flawed premise that subdivision (u) had retroactive effect. Instead, as the court in Shirk, supra, 42 Cal.4th at page 208, noted, subdivision (u) simply clarified that the 1998 amendments "were prospectivethat is, its provisions applied only to actions begun on or after January 1, 1999, or if filed before that time, actions still pending as of that date," including those which would have been barred under the earlier limitations period. Plaintiffs also forget that subdivision (u) is, by its own terms, expressly limited to the 1998 amendments, which set an age 26 limit on claims against all nonabusers, without the distinction created by subdivision (b)(2) four years later.
If plaintiffs are correct, then even though the Legislature expressly revived all lapsed subdivision (b)(2) claims for one year pursuant to subdivision (c), it also chose to silently revive a limited subcategory of those claimswhere plaintiffs were over 26 but had not yet discovered the link between the molestation and their adulthood emotional harmby way of reenacting a three-year-old provision that was designed to clarify the prospective reach of the 1998 amendments that set an age 26 limit on claims against all nonabuser entities. If so, the Legislature chose a circuitous path to achieve that result, requiring a resort to methods of legislative interpretation that are almost cryptographic. Certainly the plain language of these very different subdivisions does not show such intent. Neither does the legislative history.
*1394 At oral argument, plaintiffs' counsel recognized that conjoining subdivisions (b)(2) and (u) in this manner required reliance on an opaque expression of legislative intent. Counsel claimed he was aware of no rule of statutory construction that required the Legislature to do things "in the most efficient and clear way possible," but this is not true when determining whether a statute is retroactive. As discussed earlier, statutes are presumed to operate prospectively unless they contain express language of retroactivity, or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application. (McClung, supra, 34 Cal.4th at p. 475.) In accord with this rule, the Legislature has demonstrated that when it wants to make amendments to section 340.1 retroactive, it will do so clearly and expressly. In 1994, the Legislature added what is now subdivision (r), which states that the 1990 amendments applied to "any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." (Stats. 1994, ch. 288, § 1, p. 1928.) Subdivision (c) is just as clear.
Had the Legislature intended to permit plaintiffs' claims, it should have, and we believe it could have, done so in equally clear and unmistakable terms. For instance, the Legislature could have written subdivision (c) to state that any subdivision (b)(2) claims where those plaintiffs 26 or older had not yet made discovery were revived and the new limitations period did not begin to run until discovery occurred.
Plaintiffs claim that absent their interpretation of subdivision (u), it is surplusage. We disagree. It is important to remember that when the Legislature passed the 2003 amendments in 2002, only three years had elapsed since the effective date of subdivision (u). Actions under subdivision (a)(2) and (3) that had been pending on January 1, 1999, might have still been unresolved, requiring reenactment of subdivision (u) to eliminate any doubt that those claims remained viable. As for actions filed after January 1, 1999, that did not fall within the subdivision (b)(2) category, it was also important to retain the starting point for the shorter limitations period where the age 26 cutoff still applied. It seems far more likely to us that the Legislature had this in mind when it reenacted subdivision (u) along with its enactment of subdivisions (b)(2) and (c). We therefore reject plaintiffs' contention that absent their interpretation, subdivision (u) is surplusage.
We also reject plaintiffs' reliance on Bouley v. Long Beach Memorial Medical Center (2005) 127 Cal.App.4th 601 [25 Cal.Rptr.3d 813] (Bouley) to support their claim that the reenactment of subdivision (u) gave retroactive life to their causes of action. As of 2002, section 377.60 was amended to give *1395 domestic partners standing to sue for wrongful death. (§ 377.60, subd. (a); Bouley, at p. 606.) After that amendment took effect, the plaintiff sued for the 2001 wrongful death of his domestic partner. Defendants' demurrers were sustained, and the action was dismissed, when the trial court ruled the plaintiff lacked standing to sue under the law in effect when his partner died. The Bouley court reversed, relying in part on a 1997 amendment to section 377.60 that gave parents standing to sue for the wrongful death of their children, and which stated that section 377.60 applied to any cause of action arising on or after January 1, 1993. (§ 377.60, subd. (d).) When the Legislature reenacted subdivision (d) along with the amendment giving standing to domestic partners, it must have intended to apply that retroactivity provision to the domestic partner amendment, the Bouley court held. (Bouley, at p. 607.)
Based on this language from Bouley, plaintiffs contend the same should be true for subdivision (u) of section 340.1. We do not find Bouley persuasive authority. First, Bouley relied on People v. Bouzas (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076] (Bouley, supra, 127 Cal.App.4th at p. 607), which only noted the well-established rule that legislative reenactment of a statute that has been judicially construed without change is deemed to be legislative adoption of that construction. (Bouzas, at p. 475.) That is not the issue raised as to subdivision (u). Second, the Bouley court reversed for another reason: a 2005 amendment to section 377.60 that took effect while the case was pending on appeal expressly stated that those who could establish their qualifications as domestic partners could sue for deaths occurring before January 1, 2002. (§ 377.60, subd. (f)(1), (2); Bouley, at pp. 607-608.) Therefore, Bouley's discussion of the 1997 amendment was dicta. Finally, the statutory language involved in Bouley is critically different. The 1997 amendment at issue in Bouley was a blanket statement that section 377.60 in its entirety applied to any cause of action arising on or after January 1993. (§ 377.60, subd. (d).) As discussed above, subdivision (u) of section 340.1 applies solely to the 1998 amendment that imposed an age 26 cap on all claims against nonabuser entities without the distinction created four years later by subdivision (b)(2). Because subdivision (c) is section 340.1's lone express indicator of retroactive effect, subdivision (u) cannot logically be read as plaintiffs contend.

D. Neither Its Remedial Purpose nor Legislative History Shows That the 2003 Amendments Were Intended to Allow Plaintiffs' Actions

(6) Because subdivision (b)(2) is a remedial statute (Doe v. City of Los Angeles (2007) 42 Cal.4th 531, 536 [67 Cal.Rptr.3d 330, 169 P.3d 559]), and because the limitations period has been repeatedly enlarged several times, plaintiffs contend section 340.1 must be liberally construed to permit their *1396 actions. We do not doubt the very important remedial purpose of this statute and have no quarrel with the liberal construction rule as a general principle of statutory interpretation in this field. However, the rules of statutory construction and the language chosen by the Legislature still set the boundaries of the rule of liberal construction. Even here, where the remedial purpose is apparent, we may not read into the statute provisions that were not included, or read out those that were. (DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865] [express legislative declaration that statute be liberally construed does not confer retroactive effect]; Slocum v. State Bd. of Equalization (2005) 134 Cal.App.4th 969, 976-977, fn. 5 [36 Cal.Rptr.3d 627]; Davis v. Harris (1998) 61 Cal.App.4th 507, 512 [71 Cal.Rptr.2d 591].) We conclude, as set forth above, that the statutory language itself precludes plaintiffs' actions because they did not bring them during the revival period. No construction, liberal or otherwise, is necessary.
Plaintiffs point out three items from the legislative history of the 2002 amendment of section 340.1 that they believe show the Legislature intended to preserve their claims.[14] The first two are found in several reports, including a bill analysis by the Senate Judiciary Committee: (1) Under the heading "ANALYSIS," the report describes the effect of the proposed amendments, noting it "would provide that the absolute age of 26 limitation for actions against a third party does not apply, and the broader `within three years of discovery' statute of limitations in subdivision (a) applies, in claims against third parties" who fall within subdivision (b)(2); and (2) Under the heading "ARGUMENTS IN SUPPORT," the report notes that many childhood sex abuse victims do not manifest trauma until well after their 26th birthday. "For example, a 35-year old man with a 13-year old son involved in many community and sporting events, may begin to relive his nightmare of being molested by an older authoritarian figure when he was 13 years old and about to enter puberty. While a lawsuit against the perpetrator is possible, that person may be dead, may have moved away to places unknown, or may be judgment-proof. However, any lawsuit against a responsible third party is absolutely time-barred after the victim passes this 26th birthday. [¶] This arbitrary limitation unfairly deprives a victim from seeking redress, and unfairly and unjustifiably protects responsible third parties from being held accountable for their actions that caused injury to victims." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, pp. 3-4.)
*1397 Neither statement supports plaintiffs' position because both concern the prospective effect of the amendment, not its retroactivity. Instead, retroactivity is discussed immediately following the first example, with the report noting that the bill also provided that "notwithstanding any other provision of law, any action for damages against a third party as provided above which is barred as of January 1, 2003, solely because the applicable statute of limitations has expired, is revived and a cause of action thereupon may be brought if commenced within one year of January 1, 2003. [¶] This bill further would provide that its one-year window period shall not alter the applicable limitations period of an action that is not time barred as of January 1, 2003, and shall not apply to either" claims made final after litigation on the merits or by settlement. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, p. 3.) This tracks our analysis of the statutory language, and shows that the Legislature intended to foreclose any previously time-barred claims that were not brought within the one-year revival period.
The same is true of the other piece of legislative history cited by plaintiffs: An undated analysis that gives no indication by whom or for whom it was prepared, or that otherwise shows it is a proper subject of judicial notice as part of the official legislative history. (State Compensation Ins. Fund v. Workers' Comp. Appeals Bd. (1985) 40 Cal.3d 5, 10, fn. 3 [219 Cal.Rptr. 13, 706 P.2d 1146] [no judicial notice of purported legislative history documents without knowing who prepared them and for what purpose].)[15] Plaintiffs cite the following portion of that document: "People who discover their adulthood trauma from the molestation after the effective date of the bill will have three years from the date the victim discovers or reasonably should have discovered that the adulthood trauma was caused by the childhood abuse."
Plaintiffs contend the above quoted language clarifies the Legislature's intent regarding the retroactive effect of the 2003 amendments to section 340.1. A thorough reading belies plaintiffs' contention. The quoted language is under the subheading "Prospective application," which falls under the general subject heading "WHO CAN SUE AFTER THE BILL PASSES, AND WHEN." As mentioned earlier in Discussion part 2.B., statutes apply prospectively from the date they take effect. (City of Bellflower, supra, 247 Cal.App.2d at p. 350.) Therefore, the language plaintiffs rely on does not concern the amendment's retroactive effect. Instead, immediately under that general heading, and immediately before the subheading and discussion concerning prospective application, is the subheading "Retroactive application and revival of lawsuits." Within that subheading, the document states: "Like the Northridge Earthquake bill, this bill would create a one-year *1398 window for victims to bring a lawsuit that would otherwise be barred by the age 26 limitation." (Italics added.) When both subsections are read together and in context, they also show that discovery made after the revival window closed would make timely only those actions that were not time-barred before the 2002 amendments took effect. As to those, if not brought during the revival period, they were thereafter precluded.
One other piece of the legislative history not cited by the parties also confirms our readinga 12-page analysis by the Assembly Judiciary Committee that describes the one-year window period: "This bill applies retroactively and provides victims of childhood sexual abuse a one-year window to bring an action against a third party when that claim would otherwise be barred solely because the statute of limitations has or had expired and when the third party knew of prior claims of abuse but failed to act to prevent future abuse. [¶] Under the measure, such a claim would be revived and a cause of action may be brought if commenced within one year of January 1, 2003. . . . In other words, this bill would provide those victims who discovered their adulthood trauma after age 26, whose action has been barred by the current statute of limitations, a one-year window to bring a case against a third party that otherwise would be time-barred." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 6, 2002, p. 7 (hereafter June 2002 analysis).) In short, childhood molestation victims who were over 26 when the 2002 amendments took effect had to sue by January 1, 2004.
Plaintiffs question why the Legislature might have chosen such a course, given the remedial nature of the amendment. These cases involve incidents that occurred many years ago. There can be no doubt that the issue of molestation by Catholic priests and the numerous lawsuits resulting from that misconduct have been the subject of much notoriety for several years. As the public's and the Legislature's understanding of the horrific nature of these crimes and their effect on the victims has evolved, the Legislature has seen fit to expand the statute of limitations. However, the Legislature might have felt it necessary to balance the defendants' rights as to this older class of plaintiffs by offering them one final chance to seek redress. Otherwise, it would be possible for a plaintiff to make the requisite discovery very late in life, forcing nonabuser defendants to respond to complaints alleging actions that took place perhaps 70 or 80 years earlier.
The June 2002 analysis shows that such considerations were in the Legislature's mind. After the above quoted description of the amendment's retroactive effect, the analysis went on to note that even though the Legislature had the power to revive time-barred claims, that power must be exercised in light of the countervailing public policy behind statutes of limitations: "`to *1399 promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them.' . . . [¶] . . . Thus, the final inquiry should be whether the Legislature believes that there are sufficient public policy reasons to support reviving any otherwise barred claims under this bill, and whether such an extension would maintain the protections afforded by the statute of limitations, i.e., balancing the interests of the victims with the defendants' right to defend." (June 2002 analysis, pp. 7-8, citation omitted.) After further discussion of the Legislature's power to revive time-barred claims, the analysis returned to the issue "whether the promotion of justice would be served by extending the statute of limitations under the circumstances of these cases." The analysis then stated the policy reasons advanced by proponents of the amendmentsthat the claims to be revived involved nonabuser defendants who knew those under their control were likely to molest children, took no reasonable steps to safeguard the victims, and then delayed the plaintiffs from suing by withholding information from, or lying to, the plaintiffs. (June 2002 analysis, pp. 8-10.)
We offer no opinion on this possible explanation except to state that it is neither illogical nor irrational.

E. Plaintiffs' Claims Were Not Revived by a Changed Accrual Date

Plaintiffs contend that even if subdivision (b)(2) is prospective, it changed the accrual date for their claims to the time of discovery, making their actions timely. They rely on Nelson v. Flintkote Co. (1985) 172 Cal.App.3d 727 [218 Cal.Rptr. 562] (Nelson) to support this contention, but Nelson is inapplicable. At issue there was the recently enacted section 340.2, which provided that the one-year limitations period for asbestos-related injuries begins to run only upon the occurrence of both disability from the exposure and discovery that the injuries were due to asbestos exposure. The new statute also provided that it applied to claims that accrued before the new law that were not "otherwise extinguished by operation of law." The plaintiff sued after the statute took effect, but his action was dismissed because the trial court believed it was subject to the previous one-year limitation period that ran from discovery, without regard to the existence of a disability from the exposure. The Nelson court reversed, holding that section 340.2 changed the accrual date for asbestos claims, and that as a result the claim had never been extinguished.
(7) Nelson was criticized in Gallo v. Superior Court (1988) 200 Cal.App.3d 1375, 1380-1382 [246 Cal.Rptr. 587] for its heavy reliance on *1400 policy reasons to support its analysis. Assuming Nelson is still valid, it is inapplicable here. When a cause of action accrues and when a limitations period expires are very different issues. (V.C. v. Los Angeles Unified School Dist. (2006) 139 Cal.App.4th 499, 508 [43 Cal.Rptr.3d 103] (V.C.).) Accrual equates with the occurrence of the wrongful act and injury, and signals the start of the limitations period. The statute of limitations sets the deadline for bringing an action that has accrued. (Id. at pp. 509-510.) Although section 340.1 extends the time for bringing a childhood sexual molestation claim, it does not change the accrual date, which is when the molestation occurred. (139 Cal.App.4th at pp. 509-510.)
Defendants also rely on Shirk, supra, 42 Cal.4th at page 210, for the proposition that a child molestation cause of action accrues at the time of molestation. Plaintiffs complain that Shirkand by extension V.C.is not applicable because the defendant was a public entity and the time limit to sue was tied to the six-month deadline for filing a written claim with the public entity defendant pursuant to the Government Claims Act. (Gov. Code, § 900 et seq.) However, the accrual date for purposes of claim filing deadlines under the Claims Act is the same as that for civil causes of action in general (Gov. Code, § 900), a fact noted by both the Shirk court (Shirk, at pp. 208-209), and the court in V.C., supra, 139 Cal.App.4th at page 510. Therefore, when those courts discussed the accrual date for child molestation claims, they necessarily had in mind the accrual date that would apply here.
(8) As plaintiffs point out, however, the delayed discovery rule postpones accrual of a cause of action until a plaintiff discovers or should have discovered his cause of action. (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] (Norgart).) Despite the holdings in Shirk and V.C., the court in K.J. v. Arcadia Unified School Dist. (2009) 172 Cal.App.4th 1229 [92 Cal.Rptr.3d 1] (Arcadia Unified School Dist.), relied on Norgart to hold that the delayed discovery rule postpones accrual of a childhood sex abuse claim.[16] (Arcadia Unified School Dist., at pp. 1242-1243.) However, a plaintiff discovers his cause of action when he at least suspects a factual basis for its elementsthat someone has done something wrong to him. (Norgart, supra, at p. 397.) In childhood sex abuse cases, physical harm occurs, apart from any psychological injury, at the moment of molestation. Discovery under section 340.1 is triggered by delayed discovery of adult-onset psychological injuries. A childhood molestation victim might remain aware of the abuse and the concomitant physical harm into adulthood, yet not discover adult-onset psychological harm until many years later. In one sense, therefore, a component of the cause of actionfor physical harmcan be said to have accrued by age 19. Did the Legislature intend to create two *1401 separate accrual dates, or does delayed discovery under section 340.1 simply delay the running of the limitations period?
Fortunately, we need not resolve this dispute. Even if plaintiffs are correct that their causes of action did not accrue until discovery, they were still time-barred by their 26th birthdays, long before the new limitations period took effect in January 2003. As discussed at length above, the newly extended limitations period applies prospectively only, with retroactivity for all previously time-barred claims limited to the one-year revival period. The plain language of the 2003 amendments to section 340.1 makes clear that plaintiffs had to sue during that window, and their failure to do so barred their actions. As we held in Hightower, supra, 142 Cal.App.4th at pages 767-768, the Legislature "drew a clear distinction between claims that were time-barred and those that were not. [Plaintiffs'] interpretation would obliterate that distinction by allowing [their] time-barred claim[s] to take advantage of the new limitations period."

3. Common Law Equitable Discovery Does Not Apply

Plaintiffs contend that common law equitable delayed discovery principles permit them to bring their actions because they only recently came to recognize they were wronged by defendants' conduct. (See Norgart, supra, 21 Cal.4th at pp. 397-398.) Although subdivision (d) of the 1986 version of section 340.1 and subdivision (l) of the 1990 version expressly permitted application of delayed discovery exceptions to the running of the limitations period, those provisions were removed from section 340.1 as part of the 1994 amendment. (See Historical and Statutory Notes, 13C West's Ann. Code Civ. Proc. (2006 ed.) foll. § 340.1, pp. 172-173.) As a result, we presume the Legislature intended to supplant common law delayed discovery with the statutorily defined discovery rule that it put in place from 1994 on. (City of Irvine v. Southern California Assn. of Governments (2009) 175 Cal.App.4th 506, 522 [96 Cal.Rptr.3d 78]; Arcadia Unified School Dist., supra, 172 Cal.App.4th at p. 1242 [§ 340.1 codified the delayed discovery rule].) We therefore hold that the only applicable discovery rule is the one provided by section 340.1.[17]

*1402 4. Plaintiffs' Alternative Theories Lack Merit

As a final fallback position, plaintiffs contend defendants fall outside subdivision (b)(2) and nonabuser entity liability in general (subd. (a)(2), (3)), and are instead subject to the broad three years from discovery rule applicable to perpetrators. (§ 340.1, subd. (a)(1).) They rest this contention on two theories: (1) vicarious liability for ratification of the molesters' actions or respondeat superior liability because the molesters' actions fell within the scope of their job duties; and (2) direct perpetrator liability for having procured plaintiffs for the molesters in violation of Penal Code section 266j. (See § 340.1, subd. (e), which defines childhood sexual abuse to include violations of Pen. Code, § 266j.)[18]
(9) As defendants point out, respondeat superior liability is not available because the abuse was committed outside the scope of the molesters' employment. (Mark K. v. Roman Catholic Archbishop (1998) 67 Cal.App.4th 603, 609 [79 Cal.Rptr.2d 73].) The open-ended limitations period against direct perpetrators is expressly limited to actions "against any person for committing an act of childhood sexual abuse." (§ 340.1, subd. (a)(1).) Because entity liability for wrongful or intentional acts is separately provided for by subdivision (a)(2) and (3), we conclude plaintiffs may not take advantage of subdivision (a)(1). Finally, assuming for discussion's sake only that, in the abstract, an entity defendant could be subject to criminal liability for violating Penal Code section 266j, plaintiffs did not allege such a theory in their complaint and have not stated how they might amend their pleadings to allege that such violations occurred here. The issue is therefore waived. (Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399].)

*1403 DISPOSITION
The judgments dismissing plaintiffs' complaints are affirmed. Respondents shall recover their costs on appeal.
Flier, J., and Bendix, J.,[*] concurred.
NOTES
[1] By "nonabuser," we mean generally those persons or entities whose alleged liability is based on sex abuse committed by a third person. For example, an employer of the actual child molester is a nonabuser.
[2] This is only a barebones summary of the applicable statute and its various changes through the years. We set forth the statutory history in more detail below. All further undesignated section references are to the Code of Civil Procedure.
[3] Several church dioceses under the Archdiocese of Los Angeles are the principal defendants in numerous actions brought by plaintiffs alleging they were victims of childhood sexual abuse by certain priests and other persons subject to the control or supervision of the defendant church entities. This case, along with others involving the Los Angeles Archdiocese and Orange diocese, are known collectively as Clergy Cases I (JCCP No. 4286); cases involving the San Diego and San Bernardino dioceses are known collectively as Clergy Cases II (JCCP No. 4297); and Clergy Cases III (JCCP No. 4359) involves various Northern California dioceses. Clergy Cases I and II were coordinated with the Los Angeles County Superior Court, and the Second District of the Court of Appeal has been designated as the intermediate appellate court for all of the coordinated cases.
[4] Plaintiff John Doe filed his complaint in August 2004. Plaintiffs John Doe 1 and John Doe 2 filed theirs in July 2005. These three plaintiffs alleged they had discovered the cause of their emotional harm within the last three years, raising the possibility they had made the discovery before the revival period began. The remaining plaintiffs filed their actions in 2007 and alleged discovery dates of no earlier than 2004, after the revival window had closed.
[5] Former section 340.1, subdivision (a)(2) applied to actions against persons or entities who owed a duty of care to the plaintiff, where a wrongful or negligent act by that defendant was a legal cause of the childhood sexual abuse. Former section 340.1, subdivision (a)(3) applied to actions against such entities whose intentional act was a legal cause of the abuse.
[6] Subdivision (u) was originally enacted as subdivision (s) of section 340.1.
[7] For ease of reference, when we refer to discovery or making discovery, we mean discovery that psychological harm occurring during adulthood was caused by an act of childhood molestation.
[8] We will hereafter refer to the various subdivisions of section 340.1 by subdivision only, without reference to section 340.1 itself. In other words, when we refer to "subdivision (b)(2)," we mean subdivision (b)(2) of section 340.1.
[9] Subdivisions (a)(2), (3), and (b)(2) all concern nonabusers whose liability rests on either negligent or intentional conduct. Subdivision (b)(2) defines a species of negligent nonabusers that would otherwise fall within subdivision (a)(2). For ease of reference, we will sometimes describe subdivision (a)(2) defendants as negligent nonabusers and subdivision (a)(3) defendants as intentional nonabusers. (See fn. 4, ante.)
[10] Since our decision in Hightower, two of our sister courts have weighed in on its validity, reaching opposite conclusions. Both decisions are currently on review before our Supreme Court. (Quarry v. Doe I (2009) 170 Cal.App.4th 1574 [89 Cal.Rptr.3d 640], review granted June 10, 2009, S171382 [97 Cal.Rptr.3d 271, 211 P.3d 1060]; K.J. v. Roman Catholic Bishop of Stockton (2009) 172 Cal.App.4th 1388 [92 Cal.Rptr.3d 673], review granted June 24, 2009, S173042 [97 Cal.Rptr.3d 272, 211 P.3d 1061].)
[11] Plaintiffs acknowledged this rule during oral argument.
[12] The claims of victims who were under age 26 and who had not made discovery, or who had made discovery less than three years earlier, were not yet barred as of January 1, 2003.
[13] At least for separation of power purposes, a final adjudication occurs when the last court within a judicial system rules on a case. (Perez v. Roe 1 (2006) 146 Cal.App.4th 171, 187 [52 Cal.Rptr.3d 762] [§ 340.1, subd. (c) revival window violated separation of powers doctrine to extent it sought to revive actions that had been concluded by trial or dispositive judicial ruling].)
[14] Plaintiffs asked us to judicially notice the legislative history of the 2002 amendments. We shall do so.
[15] We assume for discussion's sake only that this document meets the requirements of judicial notice.
[16] See footnote 17, post, for a further discussion of Arcadia Unified School Dist.
[17] Amicus curiae counsel contends that in Hightower, supra, 142 Cal.App.4th 759, we held that common law delayed discovery had been supplanted by the statutory version in section 340.1. Plaintiffs respond that Hightower "recognized that the common law delayed discovery doctrine was available, but found that Hightower could not satisfy its requirements." Neither is correct. The issue of whether common law delayed discovery had been supplanted by the 1994 amendment to section 340.1 was not raised as an issue in Hightower. Instead, we rejected Hightower's contention that the delayed discovery rule of subdivisions (a) and (b)(2) applied. (Hightower, at pp. 767-768.) In short, we did not decide the issue in Hightower because it had not been raised.

Plaintiffs contend that Arcadia Unified School Dist., supra, 172 Cal.App.4th 1229, held that common law delayed discovery was still applicable under section 340.1. However, the court in fact held that the codified delayed discovery rule of section 340.1 was not applicable to claims against government entities because of the six-month claim presentation deadline. Even so, the court applied general delayed discovery principles to determine the accrual date of the plaintiff's cause of action for purposes of determining when the claims presentation deadline began to run. (172 Cal.App.4th at pp. 1241-1243.) Of course, in this case, the defendants are not government agencies or public entities that may invoke the claims presentation deadline.
[18] Penal Code section 266j makes it a felony to intentionally give, transport, provide, or make available to another person a child under 16 for the purpose of lewd or lascivious acts.
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.